(160 App. Div. 725)

### SELWYN & CO. v. WALLER et al.

(Supreme Court, Appellate Division, First Department.   February 13, 1914.)

1. JOINT ADVENTURES (§ 4*)—CONTRACT—CONSTRUCTION—RIGHTS OF PARTIES
   Where a contract between defendants for the production of a play expressly provided that they were to produce the play, not as partners, but with a mere sharing of profits and losses, each to contribute a certain sum of money to the enterprise, they were not partners as between themselves, and hence one of them was under no obligation of trust or otherwise to the other not to assign a part of his share of the profits.

   [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. §§ 3–6; Dec. Dig. § 4.*]

2. ASSIGNMENTS (§ 126*)—RIGHTS OF ASSIGNEE—DEFENSES.
   Where defendants contracted one with the other to produce a play and share the profits and losses in certain proportions, paying royalties to the authors, as a part of the expense, it was no defense to an action by an assignee of a portion of such profits from one of the joint adventurers, against the other, that the assignor had secretly obtained from the authors an assignment of 25 per cent. of their royalties, in the absence of any allegation that the joint contract would not have been made had such fact been disclosed.

   [Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 195–197; Dec. Dig. § 126.*]

   Laughlin and Hotchkiss, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Selwyn & Company, play brokers, a New York Corporation, against Lewis Waller and another. From an order (142 N. Y. Supp. 1051) sustaining a demurrer to the first and second separate defenses of defendant Lee Shubert, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Walter H. Pollak, of New York City, for appellant.
Melville H. Cane, of New York City, for respondent.

INGRAHAM, P. J.   The action is brought to recover the amount due to the plaintiff under a contract, whereby the appellant Shubert agreed to pay to the defendant Waller 33⅓ per cent. of the profits realized from the production of a play known as "The Butterfly on the Wheel." That contract recited that the defendant Waller had received by assignment all the right, license, and privilege to produce and perform the said play in the United States of America and Dominion of Canada, and that the parties thereto, Waller and Shubert, agreed to produce said play in the United States of America and Dominion of Canada, "not as partners, but with a sharing of the profits in the percentage of sixty-six and two-thirds (66⅔) to the party of the second part (Shubert) and thirty-three and one-third (33⅓) to the party of the first part (Waller), and with a sharing of the losses and expenses in the same percentage." The contract also contained provisions as to the methods of producing the play and as to the contributions by the parties to enable it to be produced. The contract further provided that Shubert assumed in his two-thirds proportion such obligations as

are imposed on Waller in his contract for the purchase of the production and the contract rights to produce the said piece from one Frohman, and contained further provisions as to disbursements and expenses incident to the production of the play. This contract was dated December 29, 1911.

The complaint alleged that on or about October 4, 1912, for and in consideration of $4,000 paid to him by the plaintiff, the said defendant Waller bargained, sold, transferred, assigned, granted, and conveyed to the plaintiff a 22½ per cent. interest in and to all the authors' royalties which authors' royalties had been previously assigned to the defendant Waller, and that by said agreement Waller promised that he would personally see to it that the said 22½ per cent. of authors' royalties were paid direct to the plaintiff by the managers or producers of the said play, and a copy of the contract was thereto annexed. The complaint further alleged the said play had been produced by the said defendants under their agreement and was performed by several different companies in various cities and towns throughout the United States of America and Dominion of Canada, and still is being produced by them; that said play has earned large royalties from the productions; and that the plaintiff's share of such authors' royalties earned by reason of the production has been received and is being held by the said defendants and both of them; and that the remaining 75 per cent. of authors' royalties earned from all productions of said play has been paid over by the defendants to the authors; that the plaintiff has made due and repeated demands on both of the defendants to turn over and pay to it 22½ per cent. of the authors' royalties out of the moneys earned by said play and properly chargeable to authors' royalties, and the defendants have neglected and refused to pay over to the plaintiff the said 22½ per cent. of the authors' royalties; and that the said 22½ per cent. of the authors' royalties now amounts to the sum of $8,000, and the plaintiff has made due and repeated demands on the said defendant Waller to see to it that the said 22½ per cent. of authors' royalties were paid to the plaintiff direct by the manager or managers producing the said play, but that the said Waller had neglected and refused to do so; and that the plaintiff has duly performed the terms and conditions of the agreement made with the said defendant Waller, on its part to be performed; and that the plaintiff has been damaged in the sum of $8,000, for which sum judgment is demanded.

[1] By the contracts between Waller and Shubert, it was expressly provided that Waller and Shubert were to produce the play, not as partners, but with a mere sharing of the profits and the losses. While each of the parties to the agreement was to contribute a certain sum of money to the production of the play, as between themselves they could agree that they should not be partners and that each should be entitled to his share of the profits realized from the production of the play. There is nothing in this agreement that I can see that prevented the defendant Waller from assigning to the plaintiff a part of the share in the profits that he was to receive from Shubert, and he has assigned to the plaintiff the right to a portion of the profits to which

he would be entitled under his contract with Shubert. There was no position of trust or confidence between the parties. The defendant Waller, being entitled to a percentage of the profits that would result from the production of the play, simply assigned such percentage of the profits to the plaintiff. I think it is entirely clear that, before the assignment, Waller and Shubert were not partners, so as to impose upon them any trust relation, and, by the assignment to the plaintiff, the plaintiff did not know of such a partnership or have such relation with Shubert as to impose upon it any trust relation.

[2] After denying certain allegations of the complaint, the defendant Shubert sets up two defenses. The first defense alleges that when, on or about December 29, 1911, the defendant made and entered into the agreement with the defendant Waller, alleged in the complaint and annexed thereto, he entered into such agreement and assumed the obligation therein contained believing Hemmerde & Neilson to be the sole owners of said authors' royalties and without any knowledge or notice of any assignment of the whole or any portion thereof to the said defendant Waller or to any other person; that the said defendant Waller fraudulently suppressed and concealed from this defendant, before they entered into such agreement, the fact which the said defendant Waller well knew that he had taken an assignment from the said Hemmerde & Neilson on or before December 1, 1911, of 25 per cent. of the authors' royalties earned or to be earned in the United States of America and Dominion of Canada; that between January 13, 1912, and October 26, 1912, he paid to the defendant Waller the sum of $11,621.47 upon the representation of the said Waller that said sum was the amount due to Hemmerde & Neilson for authors' royalties and that the same would be paid to the said Hemmerde & Neilson by the said defendant Waller; and that the said defendant Waller did not pay over the whole of said sum of $11,621.47 to the said Hemmerde & Neilson, but did secretly retain the sum of $2,-905.37, being a 25 per cent. interest in said authors' royalties.

It seems to me clear that this is entirely insufficient as a defense. It is not expressly alleged that, if defendant Shubert had known that Waller was entitled to 25 per cent. of the authors' royalties, he would not have made the contract with him. Nothing is alleged to show that it made the slightest difference to Shubert to whom the authors' royalties were paid. He undertook by the contract with the defendant Waller to pay the authors' royalties. The amount was not changed by the assignment, the obligation of the defendant Shubert was in no way increased by reason of the fact that, by the agreement between the authors and Waller, Waller was to retain a portion of authors' royalties that was to be paid to the authors. Nothing is alleged to show any breach of trust or any violation of any obligation of Waller to Shubert, or that it made the slightest bit of difference to whom the authors' royalties were paid. Both Waller and Shubert knew that, under the agreement by which Shubert and Waller had procured the right to produce the play, the authors' royalties had to be paid. Shubert assumed the obligation to pay his share of the authors' royalties. Both Waller and Shubert understood that authors' royalties were to be paid

out of the profits from the production of the play, and the play has been produced and profits have been realized therefrom. There was no suppression of a fact that was at all material or which could possibly have had any influence upon the making of the contract between Waller and Shubert. No fraud was committed. A mere suppression of information, as to who would ultimately receive the authors' royalties, which both parties understood should be paid and which Shubert agreed should be paid, could have no possible effect upon the making of the contract, or could have increased in the slightest degree Shubert's obligation under it. The ultimate disposition of these authors' royalties was a matter about which Shubert had no possible interest. I can see no duty of any kind that was imposed upon the defendant Waller to make any statement as to his relations with the authors or as to the ultimate disposition of the authors' royalties. It is not alleged that the suppression of this information caused Shubert any damage, and he does not even allege that he would not have entered into the contract, if he had known of defendant Waller's contract with the authors for a share of the authors' royalties.

The second defense realleges the allegations in the first defense, and further alleges that the assignment of the 22½ per cent. of the authors' royalties by the defendant Waller to plaintiff was not made honestly or in good faith; and the plaintiff was cognizant of the facts and circumstances under which said assignment was made and well knew that the defendant Waller was not the true owner of the percentage of authors' royalties so assigned, and that the said Waller had fraudulently suppressed and concealed from this defendant, at the time of entering into the agreement of December 29, 1911, annexed to the complaint, the fact that prior thereto and on or about December 1, 1911, he had taken an assignment of 25 per cent. of the authors' royalties from any and all performances in the United States of America and Dominion of Canada. But this adds nothing to the defense. The authors are not disputing the validity of the assignment of a percentage of their royalties to Waller, and it is none of Shubert's business what disposition the authors made of royalties which Shubert undertook to pay to them. I cannot see that Shubert has any more right to this percentage of authors' royalties, which the authors had assigned to Waller, than he has to the remaining percentage of authors' royalties, which the authors retained for their own use. The fact that defendant characterized these assignments as fraudulent, and the suppression of this information as to Waller's interest in the royalties as fraudulent and in bad faith, does not make them so; there is not a single fact alleged as to such charge, and not a single fact alleged that could entitle Shubert to any relief either against Waller or the plaintiff.

I think therefore the Special Term was clearly right in sustaining the demurrer to the two defenses, and that the order appealed from should be affirmed, with $10 costs and disbursements.

McLAUGHLIN and DOWLING, JJ., concur.

LAUGHLIN, J. (dissenting). The plaintiff alleges that on the 6th day of May, 1911, Edward G. Hemmerde and Francis Neilson, who

were the authors of the play or dramatic composition entitled "The Butterfly on the Wheel," and the proprietors of the performing rights thereof for the United States and Canada, made an agreement in writing with Charles Frohman, and thereby assigned to him the sole and exclusive right to produce the play in the United States and Canada for the period of five years from the date of the first production, which was to be on or before December 31, 1911, in consideration for which Frohman agreed to pay to them weekly, as authors' royalties, 5 per centum on the first $5,000 of gross weekly receipts, 10 per centum on the next $2,000, and 15 per centum on all gross weekly receipts in excess of $7,000, and at the time the agreement was signed an advance payment of £300 was made on account of said royalties; that thereafter and prior to the 1st day of December, 1911, the authors, for full and adequate consideration, duly assigned to the defendant Waller a 25 per cent. interest in and to all authors' royalties earned or to be earned from any and all performances of said play in the United States or Canada under contracts made and to be made therefor; that thereafter and in said month of December Frohman, by an agreement in writing between him and the defendant Waller, in consideration of $4,000 paid to him by Waller and of the latter's agreement to pay him the further sum of $1,000, if the play should be successful financially during the first season of its production in the United States and Canada, and of Waller's agreement to hold him "harmless against any claim which" said authors might thereafter assert against him in connection with his said agreement with them, assigned to Waller all his rights under his contract with the authors, together with all manuscripts of the play and all scenery and other equipment and properties used by him in producing it. It is recited in the agreement between Frohman and Waller that the latter in making it was acting as agent and representative of the authors. That doubtless accounts for the fact that the agreement contains no express assumption by Waller of Frohman's obligation to pay royalties.

The plaintiff further alleges that on the 29th day of December, 1911, Waller and the defendant Shubert entered into an agreement in writing, a copy of which is annexed to the complaint, for the production of the play, "not as partners, but with a sharing of the profits" and of losses and expenses in the proportions of two-thirds by Shubert and one-third by Waller, with a proviso, however, limiting Waller's liability for making advances and for losses and his responsibility to $2,500, one-half of which, according to recitals in the agreement, he had paid over to Frohman. That agreement further provided, in effect, that, for the purpose of accomplishing what the parties intended, Shubert was to be given the rights to produce the play and the use of the scenery and other property which Waller acquired from Frohman, and Waller was to give such time and attention to the production as might be convenient and as he might deem wise; and Shubert assumed two-thirds of "such obligations as are imposed on" Waller "in his contract for the purchase of the production and the contract rights to produce the said piece from the said Charles Frohman." The plaintiff also alleges that thereafter and down to October 4, 1912, Waller and Shu-

bert paid to the authors the royalties to which they were entitled under their contract with Frohman, with the exception of 25 per centum thereof, which was kept and retained by Waller by virtue of said assignment from the authors to him. It is further alleged that on the 4th day of October, 1912, the defendant Waller, in consideration of $4,000, assigned to plaintiff a 22½ per cent. interest in and to the authors' royalties, and agreed that such royalties would be paid direct to the plaintiff by the managers or producers of the play; that 75 per centum of the royalties due since the assignment to plaintiff have been paid to the authors; but that 22½ per centum of the royalties due to the authors under the contract with Frohman earned by the defendants in presenting the play since said assignment to plaintiff which have not been paid aggregate $8,000. This action was brought to recover that amount. The contract between the defendants contains no specific reference to royalties. The contract contained other provisions with respect to the presentation of the play not material to the appeal.

The defendant Shubert, after putting in issue some of the material allegations of the complaint, alleged for a first defense that when he made the contract with the defendant Waller he was not aware that the latter was interested in the royalties; that Waller fraudulently concealed from him the fact that he was so interested; and that the payments made to and received by Waller on account of royalties were received on the representation that they were to be paid to the authors, and without knowledge on the part of Shubert that there had been an assignment of any part of their interest therein; that by reason of the premises Waller became a trustee for the defendant of two-thirds of the 25 per cent. of the royalties and was without authority to assign any part thereof to the plaintiff.

For a second defense Shubert alleges, by reference, most of the allegations contained in the first defense, and further alleges that the assignment by Waller to the plaintiff was not in good faith; that plaintiff was cognizant of the facts and circumstances under which it was made and knew that Waller was not the true owner of the royalties so assigned and had fraudulently suppressed the material facts from him at the time they made the agreement of December 29, 1911, and he demands judgment for the dismissal of the complaint with costs, and that all royalties received by Waller be impressed with a trust in his favor for two-thirds thereof.

The plaintiff demurred to these defenses on the ground that they are insufficient in law upon the face thereof. Appellant urges two points in support of his appeal. The first is that he was wronged by Waller's concealment of his interest in the royalties; and the second is that upon the formation of the firm of Waller and Shubert—there is no allegation that there was such a firm—Waller's interest in the royalties became a firm asset, and that he held it in trust for the firm, and that therefore he could not assign any part thereof to the plaintiff.

The full scope of the point presented for decision may, I think, be more readily grasped by assuming that the assignment of royalties to Waller was of *all* instead of 25 per centum thereof. If Waller owned all royalties and were suing Shubert, on the agreement for the joint

adventure, to recover two-thirds thereof, we would have pointedly presented the question whether, in view of his concealment of his interest, a court of equity would aid him in appropriating to his exclusive use the share of the gross receipts of the adventure represented by the percentages set apart for royalties, thereby reducing profits if any profits were, or otherwise would have been, made; and the same point would be presented if Waller, having so concealed his interest, had secretly received and appropriated to his own use all the royalties and Shubert were here asking that he be required to account. The wisdom of ages has developed a wholesome rule of honesty and fair dealing between men about to embark in any lawful enterprise or adventure, which involves relations of mutual trust and confidence, either as partners or as joint adventurers, and that rule, which has and can have no exception, rigidly requires the utmost good faith on the part of each toward the other, and a full and complete disclosure by each of all knowledge and information possessed by him that might influence the making of the copartnership or joint adventure agreement by the other and throughout the period of its continuance, and especially his interest, if any, in property to be rented or acquired for the business venture, under penalty for failing to make such disclosure, regardless of whether or not any direct loss to the copartnership has been shown to have resulted, of forfeiture, to the copartnership or joint adventure of all secret profits realized or reserved, and of liability to account to each copartner or joint adventurer for his proportionate share thereof. White v. Sherman, 168 Ill. 589, 48 N. E. 128, 61 Am. St. Rep. 132; Getty v. Devlin, 54 N. Y. 403; s. c., 70 N. Y. 504; Brewster et al. v. Hatch et al., 122 N. Y. 349, 25 N. E. 505, 19 Am. St. Rep. 498; Dunlop v. Richards, 2 E. D. Smith, 181; Manufacturers' Nat. Bank v. Cox, 2 Hun, 572, affirmed 59 N. Y. 659; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Pratt v. Frazer, 95 Ark. 405, 129 S. W. 1088; Van Deusen v. Crispell, 114 App. Div. 361, 99 N. Y. Supp. 874; Spears v. Willis, 151 N. Y. 443, 45 N. E. 849; Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252; s. c., 84 N. Y. 586; Reinhardt v. Reinhardt, 134 App. Div. 440, 119 N. Y. Supp. 285; Joplin Land Co. v. Case, 104 Mo. 572, 16 S. W. 390; Colton Imp. Co. v. Richter, 26 Misc. Rep. 26, 55 N. Y. Supp. 486; Jordan v. Markham, 130 Iowa, 546, 107 N. W. 613; The Telegraph v. Loetscher, 127 Iowa, 383, 101 N. W. 773, 4 Ann. Cas. 667. See, also, Reis v. Volck, 151 App. Div. 613, 136 N. Y. Supp. 367; Koster v. Pain, 41 App. Div. 443, 58 N. Y. Supp. 865.

It does not appear whether or not the royalties agreed to be paid were the usual or customary authors' royalties paid on the production of a play, or whether by usage and custom there are fixed and uniform royalties. Since Waller concealed from Shubert the fact that he was interested in the royalties, it is fairly to be inferred that Shubert was led to believe that Waller could not produce the play without paying the royalties, and that, notwithstanding the requirement that such royalties would have to be paid out of the gross receipts, it was Waller's conviction that the play could be produced with financial success. If Waller's interest in the royalties had not been suppressed from

Shubert, the latter might not have undertaken to produce the play at all, or on terms embodied in the joint adventure agreement. In view of Waller's interest in the royalties and his limited liability for losses, it was to his interest to have the play produced, even if he thought no profits would be realized for distribution between him and Shubert, for he expected profits in the form of royalties. It may fairly be inferred that Waller was led by these considerations to conceal from Shubert his interest in the royalties. Manifestly Shubert on discovering the facts was at liberty to rescind the contract and to call Waller to account for a proportionate share of the profits he thus secretly realized from the receipts of the business, subject, perhaps, to reduction by a proportionate share for the period involved, of Waller's burden, if any, on account of his investment in procuring an assignment of the royalties; but I am of opinion that Shubert was neither obliged to rescind nor to acquiesce in Waller's fraud and deception, and that he was at liberty to claim, as he does in effect by his answer, that the assignment of the royalties to Waller inures to the benefit of the joint adventure, subject, possibly, to a claim for an equitable return on his investment—a point not presented for decision and on which I express no opinion. White v. Sherman, supra; Getty v. Devlin, supra; Spears v. Willis, supra; Manufacturers' Nat. Bk. v. Cox, supra; Reinhardt v. Reinhardt, supra; Mitchell v. Reed, supra; Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176; Dunlop v. Richards, supra; Van Deusen v. Crispell, supra; Reis v. Volck, supra; Brooks v. Belasco, 48 Misc. Rep. 600, 97 N. Y. Supp. 712.

If, as I am convinced and have endeavored to show, Waller could not recover the royalties from Shubert and would be accountable therefor if he owned all royalties, for the same reasons he could not recover and would be accountable for his one-quarter interest therein. Manifestly, under the defense charging plaintiff with having taken the assignment from Waller with full knowledge of the facts with respect to his having suppressed from Shubert his interest in the royalties, he could have no greater right than Waller.

I am likewise of opinion that the other defense is good, on the theory that Waller's contract for a percentage of the royalties inured to the joint adventure for the period of its continuance, and that plaintiff, under the assignment from Waller individually, took subject to Shubert's rights, and that the assignment only transferred a right to share in Waller's interest in any surplus on the termination or abandonment of the joint adventure. Wood v. American Fire Ins. Co., 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733.

I therefore vote for reversal, with $10 costs and disbursements, and for overruling the demurrer, with $10 costs, but with leave to plaintiff to withdraw the demurrer on payment of said costs.

HOTCHKISS, J., concurs.