DEAD RIVER FISHING & HUNTING CLUB *v*. STOVALL *et al.**

(Division A.   April 4, 1927.  Suggestion of Error Overruled April 18, 1927.)

[113 So. 336.   No. 25872.]

1. VENDOR AND PURCHASER. *Purchaser is charged with notice of what would be disclosed by investigation, when put on inquiry by recital in prior recorded deed of grantor.*

   A purchaser must examine previous recorded deeds of his grantor in any way affecting his title, and, if in any of them there is a recital sufficient to put a reasonably prudent man on inquiry as to sufficiency of title, he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation.

2. VENDOR AND PURCHASER. *Recorded deed of water bordering only on northwest quarter of quarter section, misdescribing it as on northeast quarter, held constructive notice of grantee's rights to subsequent purchaser of northwest quarter.*

   Where owner of a quarter section, the northwest quarter of which alone bordered on a lake (the lower part of Dead river), by deed of the water reciting that it bordered on grantor's land in the county and misdescribing it as the water bordering on the east half of said quarter section, but correctly reciting that it was known as the lower part of Dead river, such recorded deed was constructive notice of the grantee's rights in such lake to a subsequent purchaser of the northwest quarter of such quarter section.

   147 Miss.—25.

3. REFORMATION OF INSTRUMENTS. *Reformation of recorded deed containing misdescription will be granted against second purchaser from same grantor put on notice by recital in the deed.*

Grantee of water, misdescribed in deed as bordering on certain part of quarter section, may have it reformed as against subsequent purchaser from the same grantor of the part of the quarter section on which it did border, where the first deed was recorded, and by reason of recital therein was constructive notice to the second purchaser of the rights of the grantee therein.

4. ADVERSE POSSESSION. *Easements. Ten-years' possession is necessary to acquire title by adverse possession either to an easement or to land.*

Title by adverse possession, whether to land or an easement, can be acquired only by ten years' possession.

5. ADVERSE POSSESSION. *Occupancy by adjoining landowner of lake, previously conveyed to fishing club, held not such as to impart knowledge to owner of adverse claim.*

Occupancy and use by the grantee of land of part of lake bordering thereon, and previously conveyed to a fishing club, *held* not so open, notorious, and inconsistent with rights of owner as to impart to him knowledge of an adverse claim, and work disseisin and ouster necessary for title by adverse possession.

---

*Corpus Juris-Cyc. References: Adverse Possession, 2CJ, p. 50, n. 16; p. 51, n. 17, 18; p. 75, n. 60, 61; p. 117, n. 12; Easements, 19CJ, p. 885, n. 56; p. 886, n. 61; p. 893, n. 46, 48; p. 956, n. 9, 12; p. 957, n. 18; p. 964, n. 34, 36, 38; Reformation of Instruments, 34Cyc, p. 923, n. 31; p. 955, n. 7; p. 956, n. 11; Vendor and Purchaser, 39Cyc, p. 1719, n. 24; p. 1720, n. 28, 29; p. 1722, n. 37; p. 1727, n. 83; p. 1738, n. 56; As to loss of title to easement by adverse possession, see annotation in 1 A. L. R. 884; 9 A. L. R. 423; 33 A. L. R. 807; 9 R. C. L. 811; 2 R. C. L. Supp. 879; 6 R. C. L. Supp. 579.

APPEAL from chancery court of Monroe county.

HON. ALLEN COX, Chancellor.

Suit by the Dead River Fishing & Hunting Club against Henry Stovall and others. From a decree dismissing complainant's bill, it appeals. Reversed and judgment rendered.

*Leftwich & Tubb,* for appellant.

I. *The court erred in dismissing the complainant's bill.* There can certainly be no contention, as there was

at the trial, no dispute or conflict in the testimony, as to the right of the complainant to reform its deed wherein Sarah Buckingham Smith on August 27, 1908, conveyed to it the exclusive right and privilege to fish in the waters of Lower Dead river.

Sarah owned the land adjacent to this part of the river but the river, it so happened, was not located in the east half of the northeast quarter of the section. Most assuredly as between the complainant and Sarah Buckingham Smith, the grantor, or as between any of her vendees or those claiming under her with notice either actual or constructive, the complainant had the right to reform its deed if in fact the deed needed reformation.

The only error of any consequence was wherein the schivener described the location of the lake or river adjacent to the east half of the northeast quarter when he should have said the west half of the northeast quarter and part of the northwest quarter, describing by metes and bounds the actual land owned by the grantor. There was here manifest from this deed and from this proof a mutual mistake which entitled the complainant to reformation. See *Brim* v. *McGee,* 119 Miss. 52; *Miles* v. *Miles,* 84 Miss. 624.

If on the other hand this deed did not need reformation and it probably was not necessary to reform it by decree of the court, then the complainant below was entitled to a decree quieting and confirming its title and cancelling the claims of the defendants to the fishing privileges in the water of Lower Dead river and to an injunction perpetually enjoining them from trespassing in and upon said water, as prayed in the bill.

II. *Was Payne a purchaser for value without notice?* Mr. Payne is a purchaser under a deed of trust given by Sarah Buckingham Smith to E. F. Poe, trustee, to secure to Joseph E. Houston an indebtedness of two hundred twenty-nine dollars and twenty cents, which deed

of trust is dated April 17, 1911, nearly three years after the conveyance by this old negro woman to the club.

Joseph E. Houston, the beneficiary in this deed of trust, was the same Joseph E. Houston who drew the deed from Sarah Buckingham Smith, the old negro woman, to the club, in which deed she conveyed these fishing waters and privileges. Mr. Houston manifestly and evidently had notice and knowledge at the time he took this deed of trust to secure his debt of two hundred twenty-nine dollars and twenty cents that Sarah had already conveyed the lake, ''Lower Dead river,'' the fishing privileges therein, to the club, complainant below, for a period of ninety-nine years from the date of said deed. Mr. Payne could acquire no higher rights than Mr. Houston himself had. 34 Cyc., page 955, paragraph E; *Andrews* v. *Gillespie*, 47 N. Y. 487; *Adlard* v. *Stockstill*, 5 Ohio S. & C. Pl. Dec. 493, 5 Ohio N. P. 487. Under such circumstances any defense could be set up against Payne which could be set up against Houston prior to his assignment.

III. *The records gave notice to Payne.* Leaving out of consideration all knowledge which Mr. Houston himself had by reason of the fact that he drew the deed to the Fishing Club and assuming that Mr. Payne himself was a total stranger to the transaction when he took up the mortgage held by Houston and foreclosed it and bought at the foreclosure sale, what would an ordinarily prudent business man under such circumstances do to ascertain the character of the title? It is a well-known and thoroughly recognized principle that a purchaser is charged with notice of everything disclosed by the public records and if the records disclose anything suggesting even a prior conveyance, the purchaser is charged with such knowledge as he might have acquired had he made investigation.

In support of this contention we offer the following authorities: 23 R. C. L., page 341, ''Reformation of In-

struments;" *Deason* v. *Taylor*, 53 Miss. 697; *Nolen* v. *Henry*, 190 Ala. 540, 67 So. 500; Ann. Cas. 1917B 792; *Parker* v. *Foy*, 43 Miss. 260.; *Alliance Trust Co.* v. *Nettleton Hdw. Co.*, 74 Miss. 584.

We have already heretofore in this brief pointed out the descriptive terms used in the deed under which appellant claims title to the privilege of fishing in the waters bordering on the Sarah Buckingham Smith lands. What would a reasonably prudent man conclude if he examined the records and found therein the deed which Sarah Buckingham Smith made to appellant? There is most assuredly a sufficient description to indicate to any subsequent purchaser who examines the record that she had conveyed to the Fishing Club the exclusive right and privilege of fishing in the waters bordering her land, which waters were known as "Lower Dead river."

A purchaser dealing with these lands is charged with every word and recital contained in the instrument under which he takes title and also with every word and recital in all instruments transmitting the land out of the government and in the chain of title down to that date. A most interesting case designating the law on this subject is that of *Deason* v. *Taylor*, 53 Miss. 697.

It is the duty of a purchaser of land to look at his land when he buys it. It is his duty to inspect and to inquire as to these facts *in pais*. This is not only the law of Mississippi, but it is practically the universal law where land sales pass by registered title and possession. The examiner of titles is required to inquire about the possession of the property and matters lying outside the record to the attention of which such inquiry leads him. He must make inquiries *in pais*. Warvelle on Abstracts, pages 67-69 and 637-639; Pomeroy's Eq. Jurisprudence (Student's Ed.), paragraph 600.

The court will observe that the rights of the complainant in some particulars have the nature of an easement. In the inspection of the property the purchaser dealing with the land must take visible notice of such easements

and servitudes as an inspection of the estate would disclose and bring to his attention. Warvelle on Abstracts, page 640; *Knapp* v. *Bailey*, 1 A. S. R. 295; 3 Washburn on Real Property (3 Ed.), 335; *Nolen* v. *Henry*, 190 Ala. 540, 67 So. 500, Ann. Cas. 1917B 792; *Crago* v. *Vitter*, 120 Miss. 103; *Gover* v. *Falls*, 120 Miss. 201.

IV.   The decree of the court is manifestly wrong and should be reversed.

*Paine & Paine,* for appellee.

1.   The case will have to be affirmed for the reason that the chancellor decided the conflicting facts as to adverse possession by G. C. Payne in favor of him.

II.   The record and the legal title to the land and water bordering thereon in Lower Dead river is in G. C. Payne. He has a paper from Sarah B. Smith, the common source of the title. The appellant has no paper title or even color of title to this land and water; but only an alleged equity which it seeks to have enforced by reformation. Reformation is not sought against Sarah Smith, appellant's grantor, but against a third party, whom we insist was an innocent purchaser for value without notice.

The law is that he who seeks reformation must make an equitable showing and if his case is weak in its equities, reformation will be denied. If his equity is met by equities of equal dignity, the parties will be left to exercise their strict legal rights. He who has the right to have an instrument reformed should be reasonably diligent in asserting this right. If there has been unreasonable delay in seeking relief, it will be refused. It is the unalterable rule of equity that the purchaser for value without notice, actual or constructive, will not be affected by latent equities and reformation will never be granted against an innocent purchaser for value of land without

notice. Every proposition above stated has been announced by our own court. *Kilpatrick* v. *Kilpatrick,* 23 Miss. 124; *Nugent* v. *Priebatsch,* 61 Miss. 402; *Chambless* v. *Person,* 77 Miss. 806; *Goodbar* v. *Dunn,* 66 Miss. 618; 23 R. C. L., page 352, section 49.

Appellant here has unquestionably been guilty of laches, having obtained the deed in 1908 and not seeking to reform it until 1924; and the appellee has the legal title and the equity of being an innocent purchaser for value without notice, while appellant has nothing at best but an equity, admitting for the sake of argument that the proof offered by the appellant as to the alleged mistake is "clear and satisfactory," "clearest and most satisfactory," as is required by law. See 23 R. C. L., pages 367-68.

But counsel for appellant contend that Mr. Payne is not an innocent purchaser for value without notice for the reason, they say, that he had constructive notice of the mistake as shown by the deed made appellant, which deed was duly recorded. We submit that Mr. Payne had no actual notice; and if his equity of being an innocent purchaser for value without notice is destroyed, it must be by constructive notice alone.

Was Mr. Payne, under the law, required to take notice of this deed to appellant? Why should Mr. Payne be required to examine the title to land in the east half of the northeast quarter of the northeast quarter of a section when he was buying land in the northwest quarter of the northeast quarter of the same section?

If Mr. Payne could be required under the law to examine the title to land in the deed which appellant seeks to reform or if he is charged with constructive notice as to what this deed contains, then he just might as well be charged with notice of the recitations in every other deed to any other land in that same section, or in fact every other deed in the county, which would, of course, be absurd. *Spellaman et al.* v. *McKeen,* 96 Miss. 693; *Barksdale et al.* v. *Learned et al.,* 112 Miss. 861.

But for the sake of argument, suppose the court should hold that Mr. Payne was charged with the notice of the recitals of this deed made appellant by Sarah B. Smith, the inquiry then is, Are there sufficient facts therein to excite attention or put him upon inquiry? If not, then he did not receive constructive notice.

The fact that the deed to appellant recited that appellant was acquiring hunting and fishing rights in part of the water of Lower Dead river was not sufficient to excite attention or to put Mr. Payne upon inquiry for the reason that it is common knowledge that these old cut-offs of the river or of any river are generally curved and this Dead river could easily have adjoined not only the land deeded appellant but also the land deeded Mr. Payne; and not only this, but practically all these cut-offs of the river are known as "Dead rivers" and the deed to appellee conveyed land on the bank of and the water in a dead river was not sufficient to excite attention or put Mr. Payne on inquiry.

If the chancellor decided the case on the legal question as to constructive notice, then the decision was correct and must be affirmed.

McGowen, J., delivered the opinion of the court.

This is an appeal by Dead River Fishing & Hunting Club, the appellant, from a decree of the chancery court of Monroe county dismissing its original bill and denying it the relief prayed.

The case grew out of the following state of facts: In Monroe county there is a certain horseshoe shaped lake, which was, at one time, a part of the bed of the Tombigbee river. At some remote time in the past, the river cut across the neck of the horseshoe bend, changed its course, and made a new channel there. A lake was therefore formed in the old river bed—the dead part of the river, whence was derived the name "Dead River Lake." A beaver dam is now found about the middle of the lake

dividing it, and that part above the dam is called ''Dead river,'' and that part below the dam is called ''Lower Dead river.''

Prior to 1908 the appellant had, by grant, acquired the exclusive right to hunt and fish on the said land from the owner of a certain piece of property called ''the island.'' This island constitutes all the lands bordering on the west side of the lake. The appellants had also purchased a site for their clubhouse, being all the land bordering on the east side of the lake and north of the beaver dam. At that time, an old negro woman named Sarah Buckingham Smith was the owner of certain land south of the beaver dam, described as the northeast quarter of section 12, township 15, range 19; the northwest quarter of this northeast quarter bordered on the east side of Lower Dead river, but none of the other subdivisions of that particular quarter section touched the lake at any point.

In the year 1908, the said Sarah Buckingham Smith executed and delivered to the appellants a certain deed of conveyance, which was promptly filed for record with the chancery clerk of the county, and same is as follows:

''For and in consideration of the sum of one hundred ten dollars cash in hand paid by the Dead River Fishing & Hunting Club of Monroe county, the receipt of which I hereby acknowledge, I do by these presents let unto said Dead River Fishing & Hunting Club and part and parcel of water bordering on my land in said county of Monroe all its rights, title, and privileges, said club exercising the right of ownership over the same, managing and controlling same as they see fit and exercising all rights in same as owners, for the period of ninety-nine years from and after this date. Therefore, the said party of the second part, Sarah Buckingham Smith, do by these presents bargain, sell, and convey unto the Dead River Fishing & Hunting Club the property hereinafter mentioned and described for the period of ninety-nine years from this date. Said right as aforesaid being granted to

the assigns or successors of said club as in a simple fee title to same for the aforesaid period of ninety-nine years. Said property being described as a parcel and tract of water adjoining to and abutting on the lands described as follows, to-wit, the east half of the northeast quarter of section 12, Township 15, Range 19, Monroe county, Miss. And same being known as the lower part of Dead river, same being a cut off from Tombigbee river. In witness said Sarah (Buckingham) Smith hath this day set her hand. This the 27th day of August, 1908.

her

"SARAH BUCKINGHAM X SMITH.

mark

"State of Mississippi, county of Monroe.

"Personally appeared before me the undersigned authority, Sarah (Buckingham) Smith, who acknowledged that she signed, sealed, and delivered the foregoing deed and leasehold conveyance as her act and deed. Given under my hand and seal of office this the 27th day of August, 1908.

"[Seal.]            W. E. WARE, Notary Public."

On reverse side:

"Filed for record this 27th day of August 1908, at 3 o'clock p. m., and truly recorded in Deed Book 72, page 194.

"C. P. SMITH, Clerk,

"By R. P. HOUSTON, D. C."

It will be here observed that the east half of the northeast quarter of section 12 does not, at any point, border on Lower Dead river, but that it is the northwest quarter of said quarter section that touches or borders the lake.

In the year 1911, Sarah Buckingham Smith, in order to secure an indebtedness owing by her, executed a certain deed of trust conveying, among other lands, that land described as the northwest quarter of the northeast quarter of section 12, township 15, range 19.

In the year 1913, this indebtedness being past due and unpaid, a foreclosure was had, and at the trustee's sale

the land as described in said deed of trust was purchased by appellee, George C. Payne. He, through his tenants, who are the other appellees, thereupon went into possession thereof, and has remained in possession of same since that date.

The question having arisen as to who was the owner of the exclusive right and privilege of hunting and fishing in Lower Dead river, on July 14, 1924, the appellant filed in the chancery court of Monroe county its original bill, joining the appellees as parties defendant thereto, and praying for a reformation of its deed from Sarah Buckingham Smith, for the quieting and confirming in it of the property rights purported to be conveyed to it by said deed, and for an injunction restraining the appellees from interfering with their use and enjoyment of the said property rights.

The answer of the appellees after denying the allegations of the bill, sets up certain affirmative matters of defense which will hereinafter be discussed.

1.   The appellees contend that they are *bona-fide* purchasers of this land for value, and without notice of any of the rights or equities of the appellants in or to the same.

The soundness of this contention turns on the question of whether or not the deed, executed by Sarah Buckingham Smith in favor of appellants, and by it placed of record on the 27th day of August, 1908, was constructive notice to the appellees.

A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor—either immediately or remote—if such deeds or conveyances in

any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation. *Parker* v. *Foy,* 43 Miss. 260, 5 Am. Rep. 484; *Deason* v. *Taylor,* 53 Miss. 697; *Alliance Trust Co.* v. *Nettleton Hardware Co.,* 74 Miss. 584, 21 So. 396, 36 L. R. A. 155, 60 Am. St. Rep. 531; *Baldwin* v. *Anderson,* 103 Miss. 462, 60 So. 578; *Crago* v. *Vetter,* 120 Miss. 103, 81 So. 646.

In this case, Sarah Buckingham Smith is the common grantor, the common source from which both appellant and appellees derive their title. Is the previously recorded conveyance sufficient to put appellees on inquiry as to the sufficiency of this title in so far as the hunting and fishing rights in Lower Dead river are concerned?

The property conveyed is described as:

"A parcel and tract of water adjoining and abutting on the lands described as follows, to-wit: The east half of northeast quarter of section 12, township 15, range 19, Monroe county, Miss. And same being known as the lower part of Dead river, the same being a cut off from Tombigbee river."

The first recital directs attention to the fact that the waters conveyed border on the lands·owned by the grantor in Monroe county, Miss. The recital in the descriptive part of the deed instantly directs the attention to the fact that the property conveyed is the lower part of Dead river and is a cut-off from the Tombigbee river.

Inquiry and investigation would have immediately disclosed to any prospective purchaser of the land which is now owned by these appellees that the Lower Dead river did not border on the land specifically described in the deed, but, in truth and in fact, bordered on those lands which he desired to purchase.

We are therefore of opinion that the deed from Sarah Buckingham Smith to the appellant, when placed of rec-

ord on the 27th day of August, 1908, became and was constructive notice to any and all persons of the rights of the appellants in and to Lower Dead river.

From these views, it necessarily follows that the appellant was entitled to the relief prayed for by it (*Miles* v. *Miles,* 84 Miss. 624, 37 So. 112; *Brimm* v. *McGee,* 119 Miss. 52, 80 So. 379), unless the appellees have acquired title to the lands by their adverse possession of the same.

2. Whether the deed from Sarah Buckingham Smith to the appellant was a grant of an easement, or a grant of land, is here immaterial in so far as the question of adverse possession is concerned. In either case, the period of time during which the possession must be adversely held and asserted before title by adverse possession may ripen is ten years. *Ryan* v. *Miss. Valley & Ship Island R. R. Co.,* 62 Miss. 162; *Bonelli* v. *Blakemore,* 66 Miss. 136, 5 So. 228, 14 Am. St. Rep. 550; *Alcorn* v. *Sadler,* 71 Miss. 634, 14 So. 444, 42 Am. St. Rep. 484; *Warren County* v. *Mastronardi,* 76 Miss. 273, 24 So. 199.

In order to establish their claim to the property rights here involved, and in order to prove their adverse possession of said property for the statutory period, the appellees introduced a number of witnesses, who testified substantially as follows:

That the appellee George C. Payne, through his tenants who are the other two appellees, went into the possession of the lands formerly owned by Sarah Buckingham Smith, bordering on that part of Lower Dead river here in controversy, under Payne's deed from the trustee in the year 1913. Since that time he has been in the actual and continuous possession of the land and has been exercising all of the rights of ownership over same, as evidenced by his cultivation, improving and using it as his own, and renting and paying taxes on it. With special reference to the waters of the lake bordering on his land, both he and his tenants fished in them whenever they pleased, and placed boats therein for their use, pleasure,

and convenience when fishing. On numerous occasions, they gave permission to third parties to fish there, and these third parties did fish in that part of the lake under this permission. On one occasion, a notice signed by them was posted warning trespassers to keep out.

The testimony offered by the appellant with reference to the acts of ownership exercised by and under its deed is substantially as follows:

Shortly after obtaining its deed from Sarah Buckingham Smith, in the year 1908, the club had cut a canal through beaver dam and built another dam at the lower end of the lake, so as to raise the level of the water and to improve the fishing. The club members then, for a number of years, at frequent intervals, fished in Lower Dead river and continued to do so until the canal filled up so as to render it impossible to row a boat from Lower Dead river to Upper Dead river. This filling of the canal occurred about ten years before the suit was filed, and since that time the testimony fails to show that any club member had actually fished in Lower Dead river. The club had posted signs warning trespassers to keep away from Lower Dead river, and, on one occasion, about ten years ago, a number of notices had been sent out to members of a picnic party who were trespassing on the waters. A short time before this suit was filed, the club had leased to several boys the right to fish in Lower Dead river, and these boys had maintained a camp on the banks thereof and had fished there during two seasons.

In this case, the appellant is the holder of a perfect and valid paper title to the body of water here in controversy. Where the holder of the paper title is not in the actual, physical possession of the property, or where the property itself is incapable of occupation as in the instant case, such holder of the paper title is presumed to be in possession of same under and by virtue of his deed. So here, in this case, the appellant is presumed to be in possession of these waters by virtue of its deed executed to it in the year 1908. Before this presumption

of possession can be overcome, it must be shown that there has been a disseizure and ouster of the appellant by the appellees, and an adverse holding of the land by the disseizor for the statutory period; and before there can be an ouster, the owner of the lands must have had actual notice of the claim of the disseizor, or else the acts of said disseizor must be so open, so notorious, and so visible as to warrant the inference that the owner must or should have known of it. *Alexander* v. *Polk,* 39 Miss. 737; *L. N. O. & T. R. Co.* v. *Burford,* 73 Miss. 494, 19 So. 584; *Leavenworth* v. *Reeves,* 106 Miss. 722, 64 So. 660; *Jordan* v. *Jordan,* 145 Miss. 779, 111 So. 102; 1 R. C. L., p. 701, section 14.

The principle here involved is accurately stated in the case of *Alexander* v. *Polk, supra,* in the following language:

"The possession which is relied on to defeat a conveyance by the real owner must be adverse; that is, it must be openly and notoriously in defiance of the actual title, and such as converts the estate into a mere right of entry or action; to effect which, nothing short of ouster or disseisin will serve. *Zellers, Lessee,* v. *Eckert,* 4 How. U. S. R. 289, 11 L. Ed. 979. The term 'adverse possession' designates a possession in opposition to the true title and real owner, and it implies that it commenced in wrong—by ouster or disseisin—and is maintained against right. The law, on the contrary, presumes that every possession is rightful and consistent with, not in opposition or 'adverse' to, title and ownership. A party, therefore, who relies upon 'adverse possession,' in order to rebut this presumption of possession consistent with the title of the real owner, must prove his possession to be 'adverse' to the title set up, *Jackson* v. *Sharp,* 9 Johns. (N. Y.) 163 (6 Am. Dec. 267); Ld. Raym, 329; that is, he must show the actual knowledge of the real owner that he claims in opposition to, and defiance of, his title, or he must show such an occupancy and user, so open and notorious, and inconsistent with, as well as injurious to,

the rights of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner. It is not the mere occupancy or possession which must be known to the true owner, to prejudice his rights; but its 'adverse' character. Where, therefore, 'knowledge' is a matter of presumption, to be inferred from the character of the possession, the quantity held becomes material. If the whole tract in controversy is cleared and occupied by the party claiming to hold adversely, the presumption is violent that the real owner has 'knowledge' of the 'adverse' and defiant character of the claim; but where, on a boundary line between the real owner and the adverse claimant, the possession has been of a small quantity—a very narrow strip, as well attributable to accident as design—a jury would scarcely be warranted in presuming, from such evidence, that the true owner had knowledge of the 'adverse' character of such possession.''

Do the facts here present such a disseisin and ouster of the true owner? Is the occupancy and user by the appellees of this Lower Dead river so open, notorious, and inconsistent with the rights of the true owner as to impart to him knowledge of an adverse claim? We think not. The evidence offered by the appellees shows no act of ownership which is so inconsistent with the possession of the appellant as to arrest its attention, or to indicate that the property was being appropriated to the use of appellees under a claim of ownership.

The facts in this case are very similar to those in the case of *Leavenworth* v. *Reeves, supra,* which case is authority against the position of the appellees here. In that case, the Johnson Hunting Club claimed title to certain wild and uncultivated lands under a tax deed which substantially proved to be void. The club went into possession of these lands and built a hunting lodge thereon. They then had the land surveyed according to the description in the tax deed, and had the boundaries blazed. They cut trails through the woods, posted the lands against

trespassers, hunted on it, and used it as a game preserve. They also paid taxes thereon during the period they came into possession. The court held that, while the club acquired title to the land actually occupied and used by it for club purposes, and built a hunting lodge thereon, yet their occupation of the remainder of the land included in the deed was not of such a character as that the true owner would be notified to assert his title.

We are of opinion, therefore, that the lower court erred in dismissing the bill of the complainant and denying the relief for which it prayed.

The decree of the lower court will be reversed, and decree will be entered here for the appellant.

*Reversed and decree here for appellant.*