197 So.2d 212 (1967)
GULF LAND AND DEVELOPMENT COMPANY, Inc., et al.
v.
J.P. McRANEY et al.
No. 44230.
Supreme Court of Mississippi.
March 13, 1967.
Suggestion of Error Overruled April 17, 1967.
*213 Michael J. Peterson, Jackson, Norman B. Gillis, Jr., McComb, Laub, Adams, Forman & Truly, William Marion Smith, Natchez, for appellants.
Mounger & Mounger, Tylertown, Butler, Snow, O'Mara, Stevens & Cannada, Lawrence J. Franck, Henley, Jones & Henley, John Land McDavid, Jackson, for appellees.
BRADY, Justice:
J.P. McRaney and others filed their bill in the Chancery Court of Walthall County against Gulf Land and Development Company, Inc. and another, to confirm title to eighty acres of land described as the East Half of the Northwest Quarter, Section 10, Township 1 North, Range 12 East, Walthall County, Mississippi, and to cancel a certain mineral deed hereinafter described.
*214 After a full hearing on the merits the chancellor found that the description in the mineral deed was void for uncertainty, and a decree was entered confirming title in the complainants and cancelling the deed. There is no conflict in the evidence.
The deed sought to be cancelled and under which Gulf Land and Development Company, Inc., hereinafter called Gulf, and the other defendant claimed, is in the following words and figures, to-wit:
 T.L. PIGOTT ... TO OIL & GAS LEASE ...
 251 GULF LAND & DEVELOPMENT CO.
 STATE OF MISSISSIPPI
 COUNTY OF WALTHALL
In consideration of $8/00 of the Capital Stock of the Gulf Land & Development Company, Inc., of Bogalusa, Louisiana, I hereby bargain, sell, convey, warrant and deliver unto the said Gulf Land & Development Company, Inc., the following property in Walthall County, State of Mississippi, to-wit:
Seven-eights (7/8) of all of the Oil, Gas and other minerals and mineral rights in, under and about the property hereinafter described, together with the right to bore for oil, gas and to prospect and develop the other minerals on the land described as follows:
80 acres of land in Sect. 10 Ts. 1 R 12 East bounded as follows, North Fred Magee, East B.B. Brodie, West W.E. Stogner, South Dr. R. Regan, All in Section 10, Township 1, Range 12, and containing 80 acres.
Acquired by vendor, of W.E. Stogner per title of Record Book ____ Page ____, together with the right to remove any and all equipment placed thereon.
Witness my signature this the 2 day of March, 1921.
 W.E. Stogner
 W.M. Pope T.L. Pigott
 WITNESS' ACKNOWLEDGMENT
 STATE OF LOUISIANA
 PARISH OF WASHINGTON,
R.M. POPE, one of the subscribing witnesses to the foregoing instrument, who, being first duly sworn, deposeth and says: That he saw the above named T.L. Pigott, whose name is subscribed thereto, sign and deliver the same to the agent of the Gulf Land & Development Company, Inc., that he, affiant, subscribed his name as a witness thereto in the presence of said T.L. Pigott, vendor.
 R.M. Pope
 Given under my hand this the 5 day of March, 1920.
 Bascom D. Talley
 (Seal of N.P)
 Notary Public
 My commission expires Aug. 7, 1923.
*215 The deed was filed in the office of the Chancery Clerk of Walthall County on March 14, 1921, and was duly recorded on page 91 of book 22 of the deed records therein.
The complainants contend that the deed from Pigott to Gulf is void as to subsequent purchasers without actual notice because the acknowledgment is defective and the description is indefinite and uncertain. Complainants also contend that the deed is void because Gulf failed to qualify under the Blue Sky statute of the State of Mississippi and was not, therefore, a legal entity capable of taking title under the deed. Complainants, who claim to be innocent purchasers, had no actual knowledge of the deed to Gulf, and they contend that the deed, being void, did not impart constructive notice.
We first consider whether the purported mineral deed from Pigott to Gulf was void because of uncertainty in the description or whether it was sufficient to impart constructive notice to subsequent purchasers.
The deed described the land accurately as to the county, section, township and range in which it was located, the number of acres it contained, its northern and southern boundaries and part of its western boundary. The deed stated that it was bounded on the west by the lands of W.E. Stogner, and W.E. Stogner was shown to own the northwest quarter of the northwest quarter of said section. It failed to show the correct owners bounding the land on the east and on the south half of the west line. The deed showed that the land was located at least in part in the northwest quarter of the section. The deed also contained the recital "Acquired by vendor, of W.E. Stogner per title of Record Book ____ Page ____"
Complainants introduced the Chancery Clerk of Walthall County who testified that there was only one deed book containing the direct and reverse index down to the year 1920, and that an examination from the beginning of the index down to 1922 revealed that there was one instrument of record from W.E. Stogner to T.L. Pigott. That instrument, introduced into the record, was a deed dated March 25, 1920, from W.E. Stogner to T.L. Pigott conveying lands "situated in the County of Walthall and State of Mississippi, known and described as follows: East half of northwest quarter section 10, township 1, range 12 east."
It is shown in the deraignment of title that the land in question was conveyed to T.I. Garner on September 19, 1927, by a deed duly recorded in book 26, page 192, of the land records of Walthall County. On November 16, 1933, T.I. Garner and his wife executed an instrument to V.N. Roby, trustee of the Federal Land Bank of New Orleans, wherein specific reference was made to previous conveyances involving the same land "by W.E. Stogner (a former owner thereof) to Gulf Land & Development Company by deed dated Aug. 25, 1920, of record in Bk. 21 Page 586, and again, by T.L. Pigott, a subsequent former owner of said land, to said Gulf Land & Development Company by a Deed under date of March 2, 1921, and of record in Conveyance Office Book 22, at page 91 * * *." The instrument executed by Garner and his wife, designated as a deed of assignment, accurately described the land as the east half of the northwest quarter of section 10, township 1 north, range 12 east, Walthall County, Mississippi.
The recital in the deed from T.L. Pigott to Gulf that the land was "Acquired by vendor, of W.E. Stogner per title of Record" was sufficient to put subsequent purchasers on notice, and all subsequent purchasers were charged with notice of what would have been disclosed by an examination of the deed referred to in the recital. The most casual examination of the deed referred to would have revealed the section, township and range in which the land was located, that it was located at least in part in the east half of the northwest *216 quarter of said section and that it contained eighty acres. By reference to the index to the deed books, the deed from W.E. Stogner to T.L. Pigott would have been revealed. The Stogner deed was the only deed between the said parties, and it accurately described the property. In Dead River Fishing & Hunting Club v. Stovall, 147 Miss. 385, 395-96, 113 So. 336, 337-38 (1927), this Court said:
A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor  either immediately or remote  if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation.
Even if the deed had not contained the recital as to the source of the grantor's title, the instrument executed by T.I. Garner to the Federal Land Bank, hereinabove described, was sufficient to put subsequent purchasers on notice. That deed accurately described the land referred to in the instrument involved in this case, gave its date, the book and page where recorded and the names of the grantor and grantee.
In Burkett v. Peoples Bank of Biloxi, 225 Miss. 291, 83 So.2d 185 (1955), the question was whether a judgment creditor, whom we held stood in exactly the same position as a subsequent purchaser, was charged with notice of two deeds of trust executed by Gulf Coast Manufacturing Company, Inc. to Peoples Bank of Biloxi. The first deed of trust was dated October 4, 1950, and the second deed of trust, representing security for additional borrowed money, was dated February 28, 1951. Both deeds of trust contained erroneous descriptions. Subsequent to the execution of the two deeds of trust to Peoples Bank of Biloxi, Gulf Coast Manufacturing Company, Inc. borrowed certain funds from Andy Page on February 9, 1952, giving another deed of trust wherein the property was accurately described. The deed of trust to Page contained the following recital: "Subject, however, to those two certain deeds of trust executed by the grantor herein to the Peoples Bank of Biloxi, Mississippi, beneficiary, and of record in the office of the Chancery Clerk of Jackson County, Mississippi." Thereafter, on November 12, 1952, a judgment was rendered against Gulf Coast Manufacturing Company, Inc., which judgment was duly enrolled. Appellant Burkett purchased the property under an execution sale pursuant to said judgment. This Court held that while the description was inaccurate, it was sufficient to impart constructive notice. We further held that the recital in the deed of trust given to Andy Page, which deed of trust was duly recorded, was sufficient to impart notice of the existence of the two previous deeds of trust to Peoples Bank of Biloxi. In regard to the Andy Page deed of trust we said:
Creditors and subsequent purchasers had constructive notice of this deed of trust and all recitals therein contained, including the provision. "subject, however, to those two certain deeds of trust executed by the grantor herein to the Peoples Bank of Biloxi, Mississippi, beneficiary, and of record in the office of the Chancery Clerk of Jackson County, Mississippi." The two deeds of trust held by appellee were of record and the recital in the Page deed of trust gave notice that they were of record and readily available. We held in Dead River *217 Fishing & Hunting Club v. Stovall, 147 Miss. 385, 113 So. 336, that a purchaser of land is charged with notice of every statement made in the various conveyances constituting his chain of title, and all deeds and conveyances previously executed by his grantor, if such deeds or conveyances in any way affect his title; and if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could or would be disclosed by a diligent and careful investigation. (225 Miss. at 298-99, 83 So.2d at 188.)
In the Burkett case, supra, the Court cited Adams v. Hill, 208 Miss. 341, 44 So.2d 457 (1950), wherein it was held that recitals in deeds previously executed and placed of record by one's grantor  either immediate or remote  impart notice to subsequent purchasers where such recitals are sufficient to put a reasonably prudent man on inquiry.
The cases involving a mere void description without any recital sufficient to put subsequent purchasers on notice are not in point. These cases include: Pan-American Life Ins. Co. v. Crymes, 169 Miss. 701, 153 So. 803 (1934); Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 115 So. 339 (1927); Simmons v. Hutchinson, 81 Miss. 351, 33 So. 21 (1902); Nugent & Co. v. Priebatsch, 61 Miss. 402 (1883).
As previously noted, the chancellor held the deed from T.L. Pigott to Gulf void because of indefinite and uncertain descriptions. He found against complainants on all other issues. We next must examine the other issues presented by complainants to determine if the chancellor reached the correct result but for the wrong reasons.
Complainants contend that the deed from Pigott was not entitled to recordation since it shows on its face that it was signed on March 2, 1921, and the affidavit of the subscribing witness, R.M. Pope, was dated March 5, 1920, approximately one year prior to the date of execution of the deed. The chancellor found that the difference in the date of the deed and the date of the acknowledgment was merely a clerical error; that the grantee corporation was not in existence on March 25, 1920, and did not come into existence until June 2, 1920; and, further, that on March 5, 1920, the land in question was not owned by Pigott, but by Stogner. We are of the opinion that the chancellor was correct in holding the acknowledgment valid.
Complainants also urge that the acknowledgment is void because the instrument was witnessed by W.M. Pope, and the affidavit was signed by R.M. Pope. On this issue the chancellor stated correctly that there was no allegation in the bill attacking the deed on this ground. The bill of complaint states repeatedly that R.M. Pope was a witness to the deed and made the affidavit acknowledging the same.
The other question raised concerning the acknowledgment was the allegation that since R.M. Pope was a stockholder and a director of Gulf, he could not properly acknowledge a deed to which Gulf was a party. The chancellor correctly held that Mississippi Code Annotated section 4025 (1956) specifically authorizes stockholders and directors to take acknowledgments.
We are of the opinion that there is no merit in complainants' contention that there was no existing corporation to take title to the property. In Allen v. Thompson, 248 Miss. 544, 158 So.2d 503 (1963), we held that a de facto corporation exists and is capable of taking title to property where a good faith attempt has been made under existing laws to organize the corporation for some specific purpose authorized by law, and the corporation has exercised corporate functions for an indefinite time.
*218 The final question which we must decide is whether the deed from T.L. Pigott to Gulf was void because it was given in consideration of $8 of the capital stock of Gulf Land & Development Company, Inc. of Bogalusa, Louisiana, in violation of the Blue Sky law. The chancellor held that it was not.
The record discloses that Gulf never qualified to do business in Mississippi as required by the Mississippi Blue Sky law then in effect, Mississippi Laws of 1916, chapter 97. This statute established certain requirements[1] regulating and supervising the sale and purchase in this state of stocks of private, foreign and domestic corporations organized for profit and made it unlawful to sell, offer to sell or contract to sell, directly or indirectly, any stock without first complying with all the provisions of the act. It further provided that every violation constituted a misdemeanor punishable by fine and imprisonment. The proof shows that in Walthall County there were seventy-nine other transactions similar to the one involved in the present case, in each of which the consideration given was the capital stock of the Gulf Land & Development Company, Inc. of Bogalusa, Louisiana.
The total capital stock of Gulf, according to its 1926 capital stock tax return to the Internal Revenue Service, was 7191 shares with a par value of $1 per share. Most of the stock had been issued in consideration of mineral conveyances to the corporation. On May 20, 1921, the corporation had acquired 31,355.13 acres of mineral interests, most or all of which were purchased at the rate of one share of stock at a par value of $1 for 10 mineral acres. The corporation appears never to have functioned other than in the acquisition of mineral interests in consideration for the issuance of capital stock. The identity of the stockholders is not now known, and the corporation's only function since 1926 has been its recent effort to perfect title to its mineral interests. The corporation is now in receivership, and this litigation has been conducted by the receiver.
The record conclusively shows a violation of the Blue Sky law on the part of Gulf and its representatives The question then arises whether, as a matter of law, the purported deed from T.L. Pigott to Gulf was void or merely voidable. If the deed was merely voidable, the statute of limitations would have long since barred the suit of complainants. Neal v. Teat, 240 Miss. 35, 126 So.2d 124 (1961). On the other hand, if the deed was void, the statute of limitations never began to run since there was no constructive possession. See Continental Oil Co. v. Walker, 238 Miss. 21, 117 So.2d 333 (1960).
In Dixie Rubber Company v. Catoe, 145 Miss. 342, 110 So. 670 (1926), the Dixie Rubber Company failed to qualify under the Blue Sky law, Mississippi Laws of 1916, chapter 97. One Cadenhead had received $44,000 in commissions which were due him under a contract with Dixie, but which were illegal under the Blue Sky law. *219 Cadenhead and others executed a bond for repayment of the commissions. Dixie subsequently brought suit on the bond. This Court, in denying recovery, stated as follows:
Appellant complied with neither the stock sales laws of Mississippi (Laws 1916, c. 97) nor Tennessee (Acts 1913, 1st Ex. Sess. c. 31, as amended), commonly known as the Blue Sky Law. As stated, most of appellant's stock that was sold was sold in those states. Having failed to get permits to sell its stock in Mississippi and Tennessee, under the laws of those states appellant had no right to sell its stock in those states. Therefore, under the laws of both Mississippi and Tennessee, appellant's contracts for the sale of its stock in those states were unlawful and void, and therefore unenforceable. * * * (145 Miss. at 347-48, 110 So. at 671.)
In the Dixie Rubber Company case, supra, the consideration for the bond was invalid, and the Court held that the bond itself was void and unenforceable. In Weaver & Company v. Phares, 185 Miss. 224, 188 So. 12 (1939), this Court held that where a consideration for a contract is legal, but there are several promises which are divisible, the legal portions of the promises may be enforced. The Court distinguished the case then before the court from the Dixie Rubber Company case, supra, where the illegality was in the consideration for the promise.
In 17 Am.Jur.2d Contracts, section 155 (1964), it is stated:
As a general thing, the right to make contracts must be restrained where contracts are attempted against the public law, general policy, or public justice. * * *
In the same text it is stated:
It is clear that the courts will not recognize or enforce or hesitate to condemn contracts resting upon an illegal consideration. Illegal consideration consists of any act or forbearance, or a promise to act or forbear, which is contrary to law or public policy. It is insufficient to support an agreement, and an agreement founded upon it is illegal. Id. at § 157.
The well established general rule is that an agreement which violates a provision of a federal or state constitution, of a constitutional statute, or which cannot be performed without violating such a provision is illegal and void. Id. at § 165.
In 23 Am.Jur. 20 Deeds, section 68 (1965) it is stated:
An illegal consideration  that is, a consideration which is contrary to law or public policy  is insufficient consideration to support a deed. * * * Where an obviously illegal consideration is recited, the deed is void on its face.
A voidable deed must be attacked, if at all, directly, but a deed that is void may be collaterally attacked by anyone whose interest is adversely affected by it. 26 C.J.S. Deeds § 69 at 792 (1956); Money v. Wood, 152 Miss. 17, 118 So. 357 (1928).
The deed from Pigott to Gulf was one of a series of transactions which was the principal method Gulf employed to sell its common stock. This was done in direct violation of the laws of the State of Mississippi, and each such act constituted a misdemeanor, punishable by fine and imprisonment. There was no consideration for the deed in question other than the illegal stock transaction. We are of the opinion that the transaction was utterly void and imparted no notice to subsequent purchasers, nor did it set in motion the running of the ten-year statute of limitations upon which appellant relies.
This is not a case where the innocent party to an illegal transaction has the mere right to rescind the contract and recover the consideration paid. In those cases the transaction is merely voidable. Under all the circumstances of this case, the deed was absolutely void and is subject to collateral *220 attack. Nothing has occurred since its execution that could be said to validate it. There is no proof that Pigott received or retained any certificate of the capital stock of Gulf. The bill of complaint was properly sustained by the chancellor and the relief was properly granted although the chancellor assigned the wrong ground therefor.
A decree of the chancery court must be affirmed if there is any ground upon which it may be supported, although the chancellor based his decree upon an insufficient ground. State ex rel. Dist. Attorney v. Oberlin, 222 Miss. 42, 75 So.2d 56 (1954).
We are therefore of the opinion that the decree of the chancellor should be, and it is, affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, PATTERSON and SMITH, JJ., concur.
NOTES
[1] The requirements include the payment of a $50 fee, and the filing in the office of the secretary of state a statement showing the plan upon which stock is to be sold, all forms of contracts or deeds (applicable to mining, oil or gas corporations), to be used by the corporation or its promoters, the name, location and domicile of said corporation, and the names of its officers, promoters and addresses of all parties; the amount of capital stock, and of any proposed increase, and the price at which the stock is to be sold. If a corporation is organized under the laws of any other jurisdiction it shall file with the secretary of state a copy of its charter and all amendments. The statement filed with the secretary of state shall show the commission and estimated incidental expenses proposed to be charged in connection with the sale of its stock. If it is a mining, oil or gas corporation, the officers shall state the facts upon which they base their estimate of the value of the property which is to become an asset. Violation of any part of the act is punishable by a fine not exceeding $2,000, and imprisonment not exceeding one year.