462 So.2d 719 (1985)
Norbert KEPPNER and Michael L. Shular
v.
GULF SHORES, INC., and Wen Coast-Wendelta, Inc.
Nos. 54371, 54486.
Supreme Court of Mississippi.
January 16, 1985.
*720 Joe Sam Owen, P.C. Alston, Blackwell, Owen & Galloway, Gulfport, for appellants.
Stanford E. Morse, Jr., White & Morse, Gulfport, for appellees.
En Banc.
PRATHER, Justice, for the Court.
This appeal involves the ownership and use of a sewage disposal system, a joint venture of three business corporations. The original joint venturers were Gulf Shores, Inc., Wen Coast-Wendelta, Inc. (Wendy's) and the Omelette Shoppe. After the Omelette Shoppe's bankruptcy, Michael Shular, who owned the Gulfport Sheraton Inn (Sheraton), bought the realty owned by the Omelette Shoppe upon which the sewage disposal system was located. Gulf Shores and Wendy's sought and secured a permanent injunction in the Chancery Court of Harrison County permanently enjoining Michael Shular, Sheraton owner, and Norbert Keppner, Sheraton manager, from discharging sewage from the Sheraton Inn into a sewage lift station constructed and utilized by Gulf Shores, Inc. and Wen Coast-Wendelta, Inc.
A second suit is combined in this appeal for a contempt citation against Shular's *721 manager of the Sheraton, Keppner, for non-compliance with the injunction.
Shular and Keppner appeal from the issuance of the injunction and contempt order assigning as error:
(1) That the court erred in holding that Shular purchased the property upon which the sewage treatment station is located subject to the terms of a joint venture agreement between the Omelette Shoppe, Wendy's and Gulf Shores.
(2) That the court erred in admitting parol evidence to supplement the written joint venture agreement between the Omelette Shoppe, Wendy's and Gulf Shores.
(3) That the court erred in holding that Shular and Keppner committed trespass.
(4) That the court erred in holding Keppner in contempt of its order.

I.
Sometime prior to November 11, 1979, the Omelette Shoppe, Inc., Wen Coast-Wendelta, Inc., and Gulf Shores, Inc., owned properties contiguous to one another which properties were located on the west side of U.S. Highway 49 in Gulfport. The Omelette Shoppe, Inc., and Wen Coast-Wendelta, Inc. (Wendy's) each planned to build and operate a fast food restaurant, and Gulf Shores, Inc., planned to build and operate a 150 room motel, restaurant, lounge, swimming pool and related facilities under a franchise from Holiday Inns of America.
The parties were aware that sewage collection and disposal would be required for the operations of their respective facilities, and jointly agreed to build such facility which consisted of collection lines from each of their properties to a lift station with all necessary pumps, electrical circuits and controls, and a discharge line from such lift station to a sewage collection system which had been jointly built by the City of Gulfport and Harrison County in an unincorporated area located north of the city.
The parties also agreed to construct and operate a water main from such system built by Gulfport and Harrison County which would serve each of their properties.
This agreement was incorporated into a document dated November 11, 1979, and provided inter alia, that the parties would construct a 4 inch water and force main along with a lift station according to plans drawn by T.L. Reynolds at a cost of $50,425.00. The water was to be separately metered, and all maintenance costs of the system were to be divided equally by the original owners and any subsequent users.
Though it appears that the lift station was located on the property of Omelette, Gulf Shores, Inc., granted to Wendy's and Omelette an easement on Gulf Shores, Inc., property for location of a portion of the force main in consideration of Omelette granting to Gulf Shores, Inc., the right to connect to the lift station.
The uncontradicted evidence is that the facility was originally designed to accommodate the requirements of the three parties, and that the T.L. Reynolds design would be sufficient to handle a peak flow of 46.96 gallons per minute.
Wendy's built its restaurant and connected into the system in 1980. Gulf Shores, Inc. started construction of its Holiday Inn in September of 1981. The Omelette Shoppe was not built, and this corporation went into bankruptcy in the year 1981.
Appellant, Michael Shular (Shular), owns the Sheraton Inn which adjoins the Omelette Shoppe property. This motel consists of 170 rooms, meeting rooms, a restaurant, lounge and swimming pool. When acquired by Shular, the motel was discharging its sewage into its own package sewage treatment plant, and also permitted another fast food restaurant, the Waffle House, to discharge its sewage into the plant. Sometime around September of 1981, Shular purchased the Omelette Shoppe property from the Trustee in Bankruptcy for $70,000, which purchase included the Omelette Shoppe's easement across the property of Gulf Shores, Inc. At the time of the purchase, Shular was not aware of the terms of the agreement between the original parties, though he did believe that the lift *722 station was on the Omelette Shoppe property which he acquired. His expressed reason for acquiring such property was for investment and expansion. Shular continued to use his package treatment plant until it became disabled around the first of November, 1981, and then, upon recommendation of an engineer, Shular caused a four inch plastic line to be attached to his pump at the treatment plant and ran such line across the surface of the Sheraton Inn property and the property acquired from Omelette Shoppe and discharged the raw sewage into the top of the lift station.
Such method of discharging sewage into the lift station was considered to be temporary as it did not meet the standards of the Mississippi Bureau of Pollution Control or regulations of the City of Gulfport and Harrison County. Though Harrison County had originally granted a permit to the original parties to the system, it did not permit this temporary solution adopted by Shular. Neither did the Bureau of Pollution Control.
Mr. Sherwood Bailey (Bailey), Vice President of Gulf Shores, Inc., and one of the principals in this corporation, learned in early February that Shular was discharging sewage into the lift station without the permission of Wendy's or Gulf Shores, Inc., and wrote Shular and demanded that he stop.
Hearing nothing from Shular, Bailey subsequently employed counsel who also wrote Shular. Shular did not respond, and on May 11, 1982 Gulf Shores and Wendy's filed their petition in the Chancery Court of Harrison County, seeking to enjoin Shular and Keppner from using the sewage treatment system as a trespass to their rights. Following a hearing for a preliminary injunction, consolidated with a trial on the merits, the court on June 14, 1982, found that Shular succeeded only to the interest of the Omelette Shoppe, and issued its judgment permanently enjoining Shular and Keppner from discharging sewage from the Sheraton Inn Motel into the sewage treatment station in excess of the Omelette Shoppe's estimated usage of five gallons per minute.

II.
Appellant's challenge to this holding raises three legal questions: (A) Whether the agreement between the Omelette Shoppe, Wendy's and Gulf Shores constituted a joint venture; (B) whether the bankruptcy of the Omelette Shoppe terminated the joint venture; (C) whether Shular bought the Omelette Shoppe property as an innocent purchaser for value without notice of the joint venture agreement.

A.
The trial court's conclusion that the agreement between the Omelette Shoppe, Wendy's and Gulf Shores constituted a joint venture was based upon this court's decision in Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942). In that case, this Court recognized that an exact definition of joint venture to fit all cases could not be given. The case held that determination of whether an association was in fact a joint venture is based upon the terms of the agreement, the acts of the parties, the nature of the undertaking and other facts. In Sample this Court generally defined a joint venture as "an association of persons to carry out a single business enterprise for profit, for which purpose they combined their property, money, effects, skill and knowledge." 8 So.2d at 260. But the court also recognized that the venture could be for the purpose of material benefit rather than profit. However, the necessary elements to constitute a joint venture were recognized as joint purpose and proprietary control. 8 So.2d at 261.
In the case sub judice the agreement between the Omelette Shoppe, Wendy's and Gulf Shores provides that the parties will "share equally cost of running four inch water and four inch force main along with lift station as per plans and specifications ..." The agreement further provides that "all maintenance cost of this line and lift station to be divided equally by owners and any subsequent users." The *723 parties, all businessmen with plans for the development of their properties, recognized that some form of sewage treatment would be necessary and agreed in writing to construct and maintain a sewage treatment station for the mutual benefit of all. Thus there was joint purpose and proprietary control.
This Court agrees with the trial court that these facts meet the necessary requirements of a joint venture. Therefore, the chancellor's conclusion that, based upon Sample v. Romine, the agreement between the Omelette Shoppe, Wendy's and Gulf Shores, constituted a joint venture was correct.

B.
Appellants argue that any joint venture agreement between the Omelette Shoppe, Wendy's and Gulf Shores was terminated in February of 1981 when the Omelette Shoppe became bankrupt.
There are no Mississippi cases, and none have been found from other jurisdictions, discussing the effect upon a joint venture of the bankruptcy of one of the members. Appellant cites 46 Am.Jur.2d Joint Ventures § 30 (1969) for the proposition that the law relating to the termination of partnerships applies as well to joint ventures. Accordingly, appellants urge that this question is governed by Mississippi's Uniform Partnership Law, which provides that a partnership is dissolved "by the bankruptcy of any partner or the partnership." Miss. Code Ann. § 79-12-61. Appellants thus urge that Shular did not purchase the Omelette Shoppe property subject to the joint venture agreement because at the time of the purchase the joint venture had been terminated through the bankruptcy of one of its members.
The concept of joint ventures is a creature of the American courts. Aiken Mills v. United States, 144 F.2d 23 (4th Cir.1944), Tompkins v. Commissioner of Internal Revenue, 97 F.2d 396 (4th Cir.1938). "As a legal concept, it is of comparatively recent origin, and is still in the process of development... . [I]t was regarded at common law as merely an informal partnership." 48 C.J.S. Joint Adventurers, § 1, at 803 (1947).
Partnerships, however, are now statutory creatures and defined by that authority under the Mississippi Uniform Partnership Act of April 1, 1977. Miss. Code Ann. § 79-12-1 et seq. (1984 Supp.). Under this definition a partnership must be an association of two or more people to carry on a business for profit. Miss. Code Ann. § 79-12-11 (1984 Supp.) Since the association in the case sub judice is not a "business for profit," it is therefore not a partnership as defined by the statute. Therefore, partnership statutes, and particularly section 79-12-61 relating to bankruptcy as a cause of dissolution, do not necessarily apply to joint ventures.
This Court acknowledges, however, that partnership law and joint venture law under the common law are analogous. Further consideration is necessary, therefore, to determine if bankruptcy causes dissolution of a joint venture.
It has been held by other jurisdictions that sale or assignment by one joint venturer of his interest does not, in and of itself, terminate the joint venture. Salem-Fairfield Telephone Ass'n v. McMahan, 78 Or. 471, 153 P. 788 (1915), Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545 (1928), Kaufman v. Catzen, 100 W. Va. 79, 130 S.E. 292 (1925). Selwyn v. Waller, 146 N.Y.S. 7, reversed on other grounds, 212 N.Y.S. 507, 106 N.E. 321 (1914). We hold that whether a joint venture terminates when one of the joint venturers becomes bankrupt turns upon proper construction of the joint venture agreement. See Johnston v. Holiday Inns, Inc., 595 F.2d 890 (1st Cir.1979), Cohen v. Lansburgh, 366 So.2d 154 (Fla.App. 1979). The agreement sub judice contains no definite term of expiration. By contrast, it does provide for equal maintenance costs by the owners "and any subsequent users." By use of such language, the original parties contemplated an indefinite period of continuance for an ongoing association and the possibility *724 of other "subsequent users." The bankruptcy caused a sale, not only of the real estate of Omelette, but also the sale of the rights of the joint venture that attached to that realty. The above cited jurisdictions have held that a sale and assignment of an interest in a joint venture does not dissolve the venture, and this Court finds this reasoning to be sound. This Court therefore holds that sale, whether transferred through bankruptcy or directly by the owner, is not a cause for automatic termination of a joint venture. Other factors may give rise to termination, but we do not address them here.
It should be pointed out here that the joint venture of these parties concerned itself with the construction and maintenance of the sewage treatment system. It does not concern itself with title to real estate and any easement rights thereto.

C.
Under this Court's decision in Sample v. Romine, supra, a trust imposed upon property as a result of a joint venture agreement follows the property until it passes into the hands of an innocent third party purchaser. 8 So.2d at 262. The question then is whether Shular was an innocent purchaser of the Omelette Shoppe property where the deed refers to an easement agreement.
The deed to the Omelette Shoppe property contains no reference to the joint venture agreement between the Omelette Shoppe, Wendy's and Gulf Shores. Moreover, the joint venture agreement was never recorded. However, the deed to the Omelette Shoppe property refers specifically to the easement granted by Gulf Shores to the Omelette Shoppe. The easement agreement between Gulf Shores and the Omelette Shoppe was recorded.
In Dead River Fishing and Hunting Club v. Stovall, 147 Miss. 385, 113 So. 336 (1927), this Court stated:
A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor  either immediately or remote  if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation. Parker v. Foy, 43 Miss. 260, 5 Am.Rep. 484; Deason v. Taylor, 53 Miss. 697; Alliance Trust Co. v. Nettleton Hardwood Co., 74 Miss. 584, 21 So. 396, 36 L.R.A. 155, 60 Am.St. Rep. 531; Baldwin v. Anderson, 103 Miss. 462, 60 So. 578; Crago v. Vitter, 120 Miss. 103, 81 So. 646.
113 So. 337-338.
The recorded easement agreement sets forth that the easement "is granted as a perpetual easement to run with the land" and was granted for the purpose of installing and maintaining water and sewer lines. The agreement further provides that exchange for the easement Gulf Shores would have the right to attach its sewer lines to the sewer lines of the Omelette Shoppe. Under the rule of Stovall, this Court concludes that reference to the easement agreement in the Omelette Shoppe deed and the language in the recorded easement was sufficient to put a reasonably prudent man on notice to inquire of an arrangement between Gulf Shores and Omelette Shoppe for the treatment of sewage. This Court holds that the trial court properly found Shular purchased the interest of Omelette in the joint venture. Further, the court correctly held that the purchase of the real estate upon which the sewage treatment station was located was subject to the terms of the joint venture agreement.

*725 III.
Appellants further argue that, even if Shular became a member of the joint venture upon purchasing the Omelette Shoppe property, his rights in the lift station were unduly restricted by the judgment below. The chancellor limited the future use of the lift station by Shular to five gallons of discharge per minute, the use originally contemplated by the Omelette Shoppe. This Court finds no limitation in the terms of the original agreement among the joint venturers to justify this restriction. Moreover, the original agreement provided that all maintenance costs of the sewage line and lift station would be divided equally by the owners "and any subsequent users", thereby evidencing proportionate use of the station by the parties. We, therefore, modify the limitation of usage placed upon Shular's operation and hold that Shular is entitled to use one-third of the lift station capacity by virtue of his ownership of one-third of the rights in the lift station and liability for one-third of its maintenance.

IV.
At the trial the court permitted Sherwood Bailey, vice president of Gulf Shores, to testify that the objective of the agreement between the Omelette Shoppe, Wendy's and Gulf Shores was to provide a sewage treatment facility which would service two fast-food restaurants and one motel. Mr. Bailey further testified that it was the understanding of all the parties to the agreement that the Holiday Inn would use more of the system than Wendy's and the Omelette Shoppe.
Appellants contend that this testimony was admitted in violation of the parol evidence rule, which provides that:
It is a general rule that parol or extrinsic evidence is not admissible to add to, subtract from, vary or contradict judicial or official records or documents, or written instruments which dispose of property, or are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake. This rule, which is known as the parol evidence rule, is one of substantive law and not merely one of evidence; and it obtains in equity as well as at law.
Fuqua v. Mills, 73 So.2d 113, 118-119 (Miss. 1954). The parol evidence rule has no application where the writing is incomplete, ambiguous or where the evidence is not offered to vary the terms of the written agreement. Byrd v. Rees, 251 Miss. 876, 171 So.2d 864 (1965); See also Corbin, Contracts, Vol. 3, § 579 (1960).
In the case sub judice the agreement between the Omelette Shoppe, Wendy's and Gulf Shores is silent on the subject of the relative use of the sewage treatment system by the parties. Therefore, the admission of testimony regarding the matter does not violate the parol evidence rule.

V.
Appellants assign as error the trial court's holding that the actions of Shular and Keppner in appropriating the capacity of the sewage treatment system constituted a trespass. The argument here is simply that, inasmuch as Shular holds the title to the property upon which the treatment system is located, there can be no trespass by Shular.
However, this finding by the chancellor was of a trespass upon the property rights of the joint venturers, as distinguished from the real estate owned by Shular. A trespass may be an offense to another's person, health, reputation, or property. 75 Am.Jur.2d Trespass, § 1, (1974). This situation is analogous to the owner of a servient estate interfering with the enjoyment of the easement rights of another, even though the easement is nonpossessory. This assignment is without merit.

VI.
Appellant Keppner argues that the court erred in holding Keppner in contempt, contending that compliance with the order was literally impossible on Keppner's part. *726 Keppner relies upon McHenry v. State, 91 Miss. 562, 44 So.2d 831 (1907). In that case, this Court reversed a judgment of contempt, stating "where it appears that it is or was impossible to comply with the order without fault on the part of the one charge, there is no contempt." 44 So. at 835. See also Hansbrough v. State, 10 So.2d 170, 171 (Miss. 1942) (It is an essential element to a contempt that the party charged shall have been able to comply with the order).
In the case sub judice, the evidence showed that on June 28, 1982, two weeks after the court had issued its injunction, the Sheraton was continuing to discharge sewage into the sewage treatment station in excess of the amount allowed by the court's decree. At the hearing Keppner testified that he had no authority to restrict the flow of sewage from the Sheraton and that it was not possible for him to comply with the order. Keppner testified that he had contacted Shular but that Shular was dealing with Clark Malchow, the engineer for the Sheraton, and not with Keppner. Clark Malchow testified that he and Shular were studying the available options. According to Malchow the least time-consuming of these options  construction of a steel tank to hold the Sheraton's sewage  would take at least two weeks.
This Court concludes that it was impossible for defendant Keppner, the hotel manager, to have brought the motel within the terms of the injunction, and we therefore reverse the contempt citation against the employee Keppner.
The June 14, 1982 judgment of the court enjoining any discharge of sewage by the Sheraton in the sewage treatment is affirmed, as modified. The decree holding defendant Keppner in contempt of the order is reversed.
AFFIRMED IN PART AS MODIFIED AND REVERSED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, and SULLIVAN, JJ., concur.