# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-02193-SCT

*HUEY STOCKSTILL AND GAYLE B. STOCKSTILL*

*v.*

*LYNN CROSBY GAMMILL, STEWART GAMMILL, III, STEWART GAMMILL, IV, LUCIUS OLSEN CROSBY GAMMILL AND JENNIFER LYNN GAMMILL McKAY*

DATE OF JUDGMENT:            01/07/2004
TRIAL JUDGE:                 HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED:   PEARL RIVER COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:     O. STEPHEN MONTAGNET, III
ATTORNEY FOR APPELLEES:      PAUL NORMAN DAVIS
NATURE OF THE CASE:          CIVIL - REAL PROPERTY
DISPOSITION:                 ON DIRECT APPEAL:  AFFIRMED.  ON
                             CROSS-APPEAL: AFFIRMED - 10/26/2006
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Today's appeal involves two cases consolidated by the Pearl River County Chancery Court in order to litigate two families' disputes over approximately 650 acres of land in Pearl River County.   The Stockstills appeal from the chancellor's final judgment confirming clear title in the subject land to the Gammills.   The Gammills cross-appeal from the chancellor's order denying attorney's fees, expert witness fees, and pre-judgment interest.   Upon careful

consideration of the various issues presented to us, we affirm both as to the direct appeal and the cross-appeal.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On October 4, 1996, the Gammills conveyed to the Stockstills approximately 650 acres of land in Sections 23 and 26, Township 6 South, Range 17 West, in Pearl River County, Mississippi.   The two families primarily communicated through licensed real estate agent and appraiser Glen Ford.   The Gammills attempted to except a 60-acre portion of the land, the subject land of this appeal, by including a description in the warranty deed identifying the subject land as lying "north of Telley Road" and west of Interstate 59 in Section 26.   Because one part of the road identified as Telley Road had been renamed, a hotly disputed issue in this case is whether the description in the warranty deed adequately described the 60-acre portion of the land in dispute as to make the exception effective.   In December, 1997, the Stockstills cut timber on the subject land which had been purportedly excepted by the Gammills in the warranty deed.[1]   A forester hired by the Gammills estimated the cut timber at a value of approximately $50,000.   The Gammills' discovery that timber on the subject land had been cut served as the catalyst to put in motion events which led to this litigation.

---

[1]The chancellor specifically found that the Stockstills had "harvested the timber on the 'property in dispute' in or around December of 1997."

2

¶3. Lynn Crosby Gammill (Gammill)[2] filed suit against Huey Stockstill and his wife, Gayle B. Stockstill, in the Chancery Court of Pearl River County on June 11, 1999, seeking to confirm title in the subject land in Pearl River County and seeking statutory damages for the cutting of trees on the property. The Stockstills filed a separate suit against the Gammill family in the Circuit Court of Pearl River County on October 1, 1999, concerning the subject real estate.[3] In the circuit court complaint and amended complaint, the Stockstills asserted against the Gammills claims of fraud and deceit, negligent misrepresentation, breach of covenants in the warranty deed, and unjust enrichment. The Stockstills sought various forms of relief against the Gammills, including rescission of the real estate transaction and compensatory and punitive damages. Likewise, the Stockstills sought a declaratory judgment against the title company for indemnification in defending the chancery court action.

¶4. In the chancery court action, Gammill filed a first amended complaint on August 31, 2001, and this amended complaint contained various counts of confirmation and clearing of title, statutory damages and penalties, trespass, unjust enrichment, recovery of monies received by the Stockstills relating to the tree cutting, actual and punitive damages, and attorneys fees.

---

[2] Even though other members of the Gammill family were involved in these consolidated cases, Lynn Crosby Gammill asserted in her chancery court complaint and amended complaint that she "has been since January 1, 1983, the sole owner" of the subject land. However, as hereinafter noted, the Stockstills later filed a circuit court action naming as defendants members of the Gammill family; therefore, appellees/cross-appellants will sometimes be referred to as either "Gammill" or "the Gammills."

[3] In their circuit court suit, the Stockstills sued Stewart Gammill, III, Stewart Gammill, IV, Lucius Olen Crosby Gammill, Jennifer Lynn Gammill McKay, and Commonwealth Land Title Insurance Company.

The Stockstills later filed their answer to Gammill's first amended complaint, and included in their answer certain counterclaims and a prayer for relief similar to that sought in their circuit court lawsuit. Gammill filed her answer to those counterclaims raising various defenses. The Stockstills' circuit court suit was later transferred to chancery court on January 8, 2002, and the chancellor subsequently ordered that these two cases be consolidated for all purposes.

¶5.    The Stockstills asserted, inter alia, that no road named Telley Road traversed the land conveyed. They argued that the road the Gammills claim is Telley Road is actually known as Ridge Road. The Stockstills claimed that Ridge Road bordered the entire parcel of the conveyed land on the north, Edmund Mitchell Road bordered the land on the south, and Interstate 59 bordered the land on the east. Thus, the Stockstills assert that even if the Gammills had identified the road as Ridge Road, the attempted exception would not lie within the conveyed land. The Stockstills further assert that Telley Road lies in Section 23, but not in Section 26; thus, the attempted exception was superfluous. The Stockstills also claimed they wanted to buy the entire parcel and agreed on an increased purchase price to do so. On the other hand, the Gammills assert that there is only one road in Section 26 west of Interstate 59, that being the road they identified as Telley Road, and that the Stockstills' argument is an attempt to create an ambiguity in the deeds through parol evidence of a modern-day name change of the road. The Gammills further assert that Telley Road was the northern boundary of the land they conveyed and presented numerous documents, such as tax records and land deeds, referring to the road as Telley Road. Therefore, they argue that the intent of the parties was clear and that the 60-acre exception in the subject warranty deed should be upheld as valid.

4

¶6. After a three-day trial on October 14-16, 2003, the trial court filed its opinion on December 30, 2003, containing detailed findings of fact and conclusions of law. The chancellor found that the Gammill-to-Stockstill warranty deed was valid, including the 60-acre exception retained by the Gammills, and that "minimal research" on the part of the Stockstills could have easily cleared up any discrepancy in the Edmund Mitchell Road/Telley Road dispute.[4] On February 5, 2004, the Gammills filed their Motion to Award Attorneys' Fees and Expenses, under Miss. Code Ann. § 95-5-10(3). Attached to the motion were affidavits from two attorneys who worked on the case representing the Gammills, explaining how the fees were assessed. The Stockstills filed a response in opposition to the motion on February 19, 2004, asserting that because they believed they owned the subject land when they cut the timber, they did not act in bad faith, and thus should not be required to pay attorneys fees. The Gammills argued in rebuttal that the statute does not discriminate between intentional and unintentional cutting of timber; therefore, since the timber was cut, the Stockstills were required to pay attorneys fees to the Gammills. The chancellor agreed with the Stockstills' arguments and on March 2, 2004, entered an order denying the Gammills attorneys' fees. Consistent with his findings of fact and conclusions of law, the chancellor entered his final judgment on October 12, 2004. In the final judgment, the chancellor, inter alia, confirmed and

---

[4]In his opinion, the chancellor found that there was sufficient evidence revealing that it was fairly common knowledge that "Telley Road" was sometimes used in referring to "Edmund Mitchell Road." The chancellor found that "[a]lthough the description of the 'property in dispute' was inaccurate in its reference to 'Telley Road,' the description is still sufficient to allow one to locate the property with some certainty."

cleared title in favor of Lynn Crosby Gammill, and awarded damages against the Stockstills for the wrongful cutting of timber;[5] awarded to Gammill and against the Stockstills the sum of $65,526.50 [representing the value of the cut timber ($50,026.50), and the reasonable cost of reforestation ($15,500.00)]; assessed post-judgment interest against the Stockstills; assessed all costs against the Stockstills; and, denied Gammill's claims for attorneys fees, expert witness fees, and pre-judgment interest.

¶7.     The Stockstills timely appealed from the final judgment fifteen days later. Gammill likewise filed her cross-appeal from the previously entered court order and final judgment denying her attorneys' fees, expert witness fees and pre-judgment interest.   In both the appeal and the cross-appeal three issues are raised.   The Stockstills present the questions of whether the chancellor erred in: (1) finding the intent of the parties was evident from the language of the "Telley Road" exception and in refusing to apply settled rules of deed construction; (2) refusing to admit or consider the testimony of real estate agent Glen Ford as it related to the parties' intent and his dual agent role; and, (3) holding that the one-year statute of limitations under Miss. Code Ann. § 95-5-29 did not bar Gammill's claim for damages under Miss. Code Ann. § 95-5-10 resulting from the alleged wrongful cutting of timber.   On cross-appeal, Gammill re-states these issues and also raises three additional issues of whether: (4) *McCain v. Memphis Hardwood Flooring Co.*, 725 So.2d 788 (Miss. 1998), should be overruled and, if so, then whether the award to Gammill should be modified to include double the fair market

---

[5]The chancery court also entered a final judgment in the Stockstills' suit, but noted the cases had been consolidated.

value of her trees instead of only the fair market value; (5) the chancery court abused its discretion in failing to award Gammill recovery of her expert witness fees and attorneys fees; and, (6) the chancery court abused its discretion in failing to award Gammill prejudgment interest from the date she filed her suit.

**DISCUSSION**

¶8.     If the chancellor has correctly considered the applicable law, we employ an abuse of discretion standard when reviewing a chancellor's decision. *McNeil v. Hester*, 753 So.2d 1057, 1063 (Miss. 2000). This Court will not disturb a chancellor's findings unless the chancellor was manifestly erroneous. *Rice v. Pritchard*, 611 So.2d 869, 872 (Miss. 1992) (citing *Mullins v. Ratcliff*, 515 So.2d 1183, 1189 (Miss. 1984)). This Court has also held that it is not the job of this Court to redetermine questions of fact resolved by the chancellor. *Johnson v. Black*, 469 So.2d 88, 90 (Miss. 1985).

¶9.     The parties debate on direct appeal whether the chancellor abused his discretion (1) in applying (or refusing to apply) certain rules of construction to the language of the deed; (2) in determining the admissibility of evidence and testimony; and, (3) in deciding if the one-year statute of limitations did not bar Gammill's tree-cutting cause of action by relying on *McCain*. The cross-appeal arguments focus on the question of whether we should overrule *McCain*, and the questions of the award of attorneys' fees, expert witness fees, and prejudgment interest. We restate and reorder the various issues for the sake of today's discussion.

7

## I.    WHETHER THE WARRANTY DEED IS VALID

¶10.    The Gammills received the whole parcel of conveyed land through several different deeds, one of which was only for the portion excepted in this case.  On January 1, 1983, Lynn Crosby Gammill received by quitclaim deed the subject land described as being in Township 6 South, Range 17 West of Pearl River County, and being more particularly described as:

> Sec. 26 - All that part of E ½ of SW 1/4 lying North of Telley Road, and all that part of W ½ of W ½ of SE 1/4 lying West of Interstate Highway 59 and North of Telley Road, and East 13 acres of that part of the E ½ of W ½ of SW 1/4 lying North of Telley Road.

This deed was dated (and effective) January 1, 1983, and filed of record on January 31, 1983, in Deed Book 368, at pages 268-74, in the office of the Chancery Clerk of Pearl River County. On October 4, 1996, the Gammills conveyed to the Stockstills four tracts of land in Pearl River County by warranty deed filed of record in Deed Book 660, at pages 323-31, in the office of the Chancery Clerk of Pearl River County.  In this warranty deed there appeared the following language:

> LESS AND EXCEPT ALL INTERESTS CONVEYED BY THE FOLLOWING DESCRIBED INSTRUMENTS.  ALL REFERENCES TO BOOK AND PAGE NUMBERS ARE TO BOOKS AND PAGES OF SAID INSTRUMENTS RECORDED IN THE LAND RECORDS IN THE OFFICE OF THE CHANCERY CLERK OF PEARL RIVER COUNTY, MISSISSIPPI, REFERENCE TO WHICH IS MADE FOR ALL PURPOSES JUST AS THOUGH EACH INSTRUMENT WERE COPIED IN THIS DEED IN FULL AT THIS POINT:

This language appears on page 325, in Book 660, in the Pearl River County Chancery Clerk's office.  On pages 325-31, there appear numerous conveyances which are "less and excepted" from the Gammills' conveyance to the Stockstills.  On page 330, in Book 660, there appears

8

a conveyance depicting "L. O. Crosby III et al" as the grantors, "Lynn Crosby Gammill" as the grantee, January 31, 1983, as the filing date of the deed, and "368/ 268" as the book and page where the deed is located. The description of the land "less and excepted" is described as follows:

> All that part of E ½ of SW 1/4 lying North of Telley Road, and all that part of W ½ of W ½ of SE 1/4 lying West of Interstate Highway 59 and North of Telley Road, and East 13 acres of that part of the E ½ of W ½ of SW 1/4 lying North of Telley Road of Section 26.

There is thus no question that the land conveyed to Gammill in 1983, is the same land which was "less and excepted" from the 1996 conveyance to the Stockstills by the Gammills.

¶11.    The chancellor found that because of extrinsic evidence presented at trial, the deeds from the Gammills' predecessors in title and the numerous exhibits referring to the road as Telley Road, as well as the testimony that proved others were familiar with the area, one would have no difficulty from the deed description in determining where the subject land lay, and that though inaccurate, the description of the land was still sufficient to allow one to locate the property "with some certainty." The chancellor found that this description was adequate to put the Stockstills on constructive inquiry/notice in any case of what was intended in this conveyance. The chancellor relied on *Sansing v. Thomas*, 211 Miss. 727, 52 So.2d 478 (1951), and *Overby v. Cavanaugh*, 434 So.2d 1365 (Miss. 1983), to find in favor of the Gammills. The chancellor held that because the Stockstills recognized the exception in the deed to be a mistake, they also had a duty to research and determine what was actually being conveyed and excepted. The chancellor also found that "minimal research" would have easily

9

allowed the Stockstills to learn what the Gammills' intentions in the conveyance were. Where the description of land in a deed is wrong, but still adequate for one to locate the land on the ground through reasonable inquiry and research, a purchaser is deemed to be on constructive notice or inquiry. The Stockstills recognized the description as wrong but made no efforts to determine the grantors' real intent, and testimony at trial proved that, though the Stockstills argue no land fits the description in question, discovering the true intent of the grantors could have been easily accomplished.

¶12. In *Sansing*, a case also involving wrongful cutting of timber, this Court held that a complete description of the land was not necessary in the disputed deed because of reference to another deed which adequately described the land. 211 Miss. at 732, 52 So.2d at 481. The facts of *Sansing* are not unlike the evidence of other deeds introduced here, including the deed from the Gammills' predecessor in interest, despite the fact that those deeds were not referenced in the actual deed in question. However, as noted, that is not necessary. In *Neil v. Jones*, 497 So.2d 797, 800 (Miss. 1986), we relied on deeds of predecessors-in-title not mentioned in the deed at issue to determine if a land description was legally sufficient and held that "[i]n order for a deed instrument to constitute a valid conveyance, it is not necessary that a description of the land be contained in the deed, if it contains sufficient information so that by reference to some document or instrument referred to in the deed, a true and accurate description can be ascertained." *Neil*, 497 So.2d at 800 (relying on *Robert E. Ratliff Co. v. Miss. State Hwy. Comm'n*, 400 So.2d 1211 (Miss. 1981); *McManus v. Wilson*, 138 Miss. 1,

10

102 So. 543 (1925); *McLendon v. Ravesies*, 178 Miss. 428, 173 So. 303 (1937)). "In the deed instruments here, there is no reference to other deeds or documents by which the land may be more specifically identified. However, the record and briefs reflect that appellants' predecessors in title, from whom they inherited their interests in the lands, were vested with title only to lands in Monroe County involved in this suit. Therefore, the interests acquired by appellee are easily found and determined from the records in the office of the Chancery Clerk, Monroe County, Mississippi." *Id.* *Neil* is thus applicable and, like *Sansing*, assists this Court in reaching our conclusion in today's case.

¶13. The chancellor likewise relied on *Overby* as an example of when this Court has held a deed invalid. 434 So.2d at 1367. The deed in *Overby* was a tax deed and considered invalid as several different configurations of the land at issue in that case were possible by following the description. *Id.* at 1366. This Court distinguished other cases by pointing out that no extrinsic evidence had been introduced to demonstrate that the land descriptions were susceptible of being followed with certainty. *Id.* The same cannot be said here. We noted that, regarding rules of construction, interpretation of tax deeds differs from that of conveyance deeds and, "[i]ntent of the parties controls in a voluntary conveyance." *Id.* at 1367. The extrinsic evidence introduced in today's case more than adequately shows what the true intent of the parties was. The State of Mississippi, in 1974 condemnation proceedings, identified the road in Section 26 as Telley Road. In a 1975 condemnation proceeding from the Special Court of Eminent Domain of Pearl River County, the judgment (and the map and report considered)

11

refs to the subject road as Telley Road. Other numerous documents, including deeds, deeds of trust, and easements, from various financial institutions of the area, identify the road as Telley Road. In fact, even the deed conveying Tract 2 in the 1996 warranty deed to the Stockstills refers to the road as Telley Road. On cross-examination, Huey Stockstill conceded that he knows that it is customary for people familiar with the area to refer to the road as Telley Road.

¶14. The Stockstills argue that the language of the deed is ambiguous and since even the chancellor declared it inaccurate, certain rules of deed construction apply. According to the Stockstills, since the chancellor failed to employ these rules of deed construction, the chancellor's judgment should be reversed. The Stockstills likewise argue that the "four corners doctrine" discussed in *Peoples Bank & Trust Co. v. Nettleton Fox Hunting & Fishing Ass'n*, 672 So.2d 1235, 1237-38 (Miss. 1996), requires that the document be read as a whole for purposes of ascertaining the true intent of the parties. That doctrine requires that the court proceed to other rules of deed construction if a reading of the language alone does not evidence a clear understanding of the parties' intent. *Id.* at 1238. The Stockstills provide various authorities for the proposition that ambiguous deeds are to be construed against the grantor when the grantor's attorney prepared the deed. *See McCuiston v. Blaylock*, 215 Miss. 504, 509, 61 So.2d 332, 334 (1952). The Stockstills argue that because the trial court failed to apply these rules of construction, reversal is required. The Gammills, as well as this Court, acknowledge that these general rules of deed construction are valid. More

specifically, however, we have said that we will not hold a deed void "for uncertainty of description if, *by any reasonable construction*, it can be upheld." ***Neil***, 497 So.2d at 800 (emphasis added).

¶15. The chancellor also relied on ***Dead River Fishing & Hunt Club v. Stovall***, 147 Miss. 385, 395-96, 113 So. 336, 337-38 (1927), where this Court stated:

> A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor--either immediately or remote--if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation.

147 Miss. at 395-96, 113 So. at 337-38. Additionally, the chancellor relied on ***Fla. Gas Exploration Co. v. Searcy***, 385 So.2d 1293 (Miss. 1980) (finding constructive notice of parties' intent based on statements made by the parties before closing as well as the documents), and ***Adams v. Hill***, 208 Miss. 341, 44 So.2d 457, 459 (1950) (holding an ambiguous description is enough to put a buyer on constructive notice that further research was needed and that a reasonable examination of the factual situation would have disclosed the homestead, described as included within the land conveyed). In today's case, based on testimony at trial that Huey Stockstill was aware of the exception, discussed it with real estate

agent Ford, and considered it a mistake or a typographical error, a finding of constructive notice by the chancellor was not manifestly wrong or clearly erroneous.

¶16.    Under *Neil*, *Sansing*, and *Overby*, and considering the extrinsic evidence introduced at trial by the Gammills, and from the totality of the record, we find the deed in this case was valid.    Stated differently, the record in this case convinces us that the decision of the chancellor on this issue is beyond our authority to disturb.    We will only disturb a chancellor's findings if the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. *Rice*, 611 So.2d at 871.    This chancellor correctly applied this Court's decisions in *Neil*, *Sansing*, *Overby*, and *Stovall*, in reaching his decision.    Additionally the chancellor's findings of fact are more than adequately supported by the record. This issue is thus without merit.

## II.    WHETHER THE TESTIMONY OF GLEN FORD SHOULD HAVE BEEN ADMITTED AS IT RELATED TO THE INTENT OF THE PARTIES

¶17.    The chancellor heard testimony from real estate agent Glen Ford, a portion of which was heard strictly as an offer of proof (proffer) on testimony and documents not allowed into evidence by the chancellor.    The Stockstills argue on appeal that the chancellor erred in not admitting the testimony of Ford at trial because Ford was a "dual agent," acting in the interest of both parties.    The Stockstills had planned on introducing testimony of Ford concerning documents they claim evidence the negotiations between the parties.    The Gammills objected based on the fact that the documents were not signed by Stewart Gammill, were not contracts, and were not relevant.    The Stockstills also argue on appeal that Ford had apparent authority,

even though he lacked actual authority, to represent any statements of the Gammills to the Stockstills concerning the boundaries of the property. The Stockstills rely on several cases from other jurisdictions for the proposition that knowledge of a dual agent is imputed to both parties represented by the dual agent.

¶18. The Gammills argue that Ford was never acting as a dual agent on behalf of both parties. In fact the Gammills stated they paid Ford only because Ford told them that it was customary for the seller to pay the real estate broker, yet the Gammills denied engaging Ford as an agent. Both parties acknowledged that no written agreement authorized Ford to act as an agent on behalf of the Gammills. This Court held long ago that "the agency of the broker extends only to bringing the parties together. He is not authorized to make sale of the customer's land, or to make a contract of sale binding on him." *Everman v. Herndon*, 71 Miss. 823, 829, 15 So. 135, 137 (1894) (citations omitted). Our well-established standard for reviewing the trial court's admission or suppression of evidence, including expert testimony, is abuse of discretion, and the discretion possessed by a trial judge in such matters is no doubt great. *Miss. Transp. Comm'n v. McLemore*, 863 So.2d 31, 34 (Miss. 2003). Finally, findings of fact made by a chancellor which are supported by credible evidence, may not be set aside on appeal. *Allgood v. Allgood*, 473 So.2d 416, 421 (Miss. 1985). Given the testimony from both parties that Ford was not expressly given actual authority, we cannot state here that the findings of the chancellor, vested with his broad discretion concerning the admission of evidence, were not supported by credible evidence or that they were manifestly wrong or clearly erroneous. This issue is without merit.

III. **WHETHER THE STATUTE OF LIMITATIONS BARRED THE CLAIM FOR DAMAGES FOR WRONGFUL CUTTING OF TIMBER**

IV. **WHETHER *McCAIN* SHOULD NOW BE OVERRULED AND GAMMILL AWARDED DOUBLE THE FAIR MARKET VALUE OF HER TREES**

¶19. Because the Stockstills' final issue on appeal is so closely related to Gammill's first issue in the cross-appeal, we will jointly consider and discuss these issues.

¶20. Early on in the life of the chancery court proceedings, and prior to consolidation, the Stockstills raised via a motion the statute of limitations issue pursuant to Miss. Code Ann. §§ 95-5-10, -29. In a very thorough 4-page order filed on February 18, 2003, the chancellor addressed various pre-trial issues, including this statute of limitations issue raised by the Stockstills. On this issue, the chancellor, in his order, declined to dismiss Gammill's complaint based on the alleged running of the statute of limitations. The Stockstills thereafter filed a motion requesting the chancellor to reconsider his prior ruling on the statute of limitations issue, and the chancellor, by order, denied the motion for reconsideration. At trial, the Stockstills again raised this issue via a motion to dismiss, which was denied by the chancellor.

¶21. In the trial court's final judgment, Gammill was awarded $65,526.50, based on the value of the timber and the cost of reforestation. The trial court found the sum, stipulated by the parties, represented $50,026.50, the reasonable value of timber cut and sold, and $15,500, the reasonable cost of reforestation. These are damages provided for in Miss. Code Ann. § 95-5-10(1), which allows initial recovery regardless of whether the cutting was done by mistake or

16

in good faith, or whether the cutting was done willfully. Section 95-5-10(2) provides for additional damages if the cutting was actually the result of cutting done willfully, or in reckless disregard for the owner's rights.

¶22.    Miss. Code Ann. § 95-5-10 states, in its entirety:

(1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.

(2) If the cutting down, deadening, destruction or taking away of a tree without the consent of the owner of such tree be done willfully, or in reckless disregard for the rights of the owner of such tree, then in addition to the damages provided for in subsection (1) of this section, the person cutting down, deadening, destroying or taking away such tree shall pay to the owner as a penalty Fifty-five Dollars ($55.00) for every tree so cut down, deadened, destroyed or taken away if such tree is seven (7) inches or more in diameter at a height of eighteen (18) inches above ground level, or Ten Dollars ($10.00) for every such tree so cut down, deadened, destroyed or taken away if such tree is less than seven (7) inches in diameter at a height of eighteen (18) inches above ground level, as established by a preponderance of the evidence. To establish the right of the owner prima facie, to recover under the provisions of this subsection, it shall be required of the owner to show that the defendant or his agents or employees, acting under the command or consent of their principal, willfully and knowingly,

17

in conscious disregard for the rights of the owner, cut down, deadened, destroyed or took away such trees.

(3) All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court.

¶23. In other words, section 95-5-10(1) makes liable anyone who wrongly cuts trees of others and provides damages owed for so doing; and, section 95-5-10(2) provides for an additional award by way of penalties when the wrongful cutting is done willfully, or in reckless disregard. At the time of the accrual of the cause of action in today's case, section 95-5-29 provided for a one-year limitations period from the time an injury was committed in which to commence an action for "any specific penalty."[6] Here the Stockstills argue that the trial judge

---

[6]Miss. Code Ann. § 95-5-29, as it existed at the time, the Stockstills harvested the timber in December, 1997, stated:

An action for any specific penalty given by this chapter may be prosecuted in any court of competent jurisdiction within twelve months from the time the injury was committed, and not after; and a recovery of any penalty herein given shall not be a bar to any action for further damages, or to any criminal prosecution for any such offense as herein enumerated. A party, if he so elect, may, under any of the provisions of this chapter, claim less than the penalty given.

The 1999 legislative amendment, effective from and after March 19, 1999, states:

An action for the remedies and penalties provided by Section 95-5-10 may be prosecuted in any court of competent jurisdiction within twenty-four (24) months from the time the injury was committed and not after. All other actions for any specific penalty given by this chapter may be prosecuted in any court of competent jurisdiction within twelve (12) months from the time the injury was committed, and not after; and a recovery of any penalty herein given shall not be a bar to any action for further damages, or to any criminal prosecution for any such offense as herein enumerated. A party, if he so elect, may, under any of the provisions of this chapter, claim less than the penalty given.

18

erred in holding that the one-year statute of limitations prescribed in section 95-5-29, as applied to section 95-5-10, did not bar Gammill's claim for damages, since the trial judge noted that the Stockstills cut the trees on the land more than one year before Gammill filed suit. Gammill stipulated that "these penalties" under section 95-5-10(2) were barred by the one-year statute of limitation. However, Gammill argued that while the prosecution of any action for penalties under section 95-5-10(2) would be barred by the one-year statute of limitations; on the other hand, actions for damages specified under section 95-5-10(1) would not necessarily be barred by the one-year statute. In the end, the trial court found *McCain* to be factually dissimilar, and likewise found that a later decision of the Court of Appeals created doubt as to the applicability of *McCain* to the case sub judice. *See Redhead v. Entergy Mississippi, Inc.*, 828 So.2d 801, 813 (Miss. Ct. App. 2002).[7] Therefore, the trial court refused to dismiss the Gammills' lawsuit on the basis of a time-bar under section 95-5-29 or section 15-1-33.

¶24. The pertinent part of the statute upon which the Stockstills build their argument is this: "The remedy provided for in this section shall be the *exclusive remedy* . . . and shall be *in lieu*

This 1999 amendment does not apply to today's case.

[7]In fact, the trial court found *Redhead* to be in conflict with the earlier case of *Jones v. Lovett*, 755 So.2d 1243, 1247-48 (Miss. Ct. App. 2000), which applied *McCain* in finding that an action commenced under section 95-5-10 was time-barred by both sections 95-5-29 and 15-1-33. Miss. Code Ann. § 15-1-33 states that "[a]ll actions and suits for any penalty or forfeiture on any penal statute, brought by any person to whom the penalty or forfeiture is given, in whole or in part, shall be commenced within one year next after the offense was committed, and not after."

*of any other* compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees . . . ." Miss. Code Ann. § 95-5-10(1) (emphasis added). The Stockstills point out that this Court in *McCain* recognized this statute as the exclusive remedy, noting that other statutes concerning wrongful cutting of timber were repealed. 725 So.2d at 791. *See also Greenlee v. Mitchell*, 607 So.2d 97, 111 (Miss. 1992). The Stockstills argue that since the statutory damages were the exclusive remedy under Miss. Code Ann. § 95-5-10, no other basis existed under which damages could be sought except pursuant to this particular statute. Gammill presents the issue this way: Whether a property owner can recover damages of any type for the wrongful cutting of timber when the timber was cut more than one year before the plaintiff filed suit. Gammill argues that any damages which would have been due under subsection (2) were "penalties" because that subsection provides for specific penalties, such as certain dollar amounts per trees of specific sizes. Gammill states that those penalties are precluded because the statute of limitations applies only to specific penalties. However, Gammill, and the trial judge, read the statute as to allow compensatory damages from the Stockstills for the cut timber.

¶25.  In *McCain*, the McCains were property owners who sued Memphis Hardwood Flooring Company for the wrongful cutting of timber. 725 So.2d at 789. Memphis Hardwood had cut the timber between May and July of 1991, but the McCains did not discover the timber had been cut until July of 1993, two years later. *Id.* They filed suit in early August of 1993. *Id.* This Court held that section 95-5-29, then a one-year statute of limitations, applied only to

subsection (2) and not to subsection (1) as the latter was not a specific penalty controlled by section 95-5-29. We likewise found both subsections (1) and (2) of section 95-5-10 to be penal, finding that subsection (1) permits other damages caused by a person and that subsection (2) requires a specific penalty; thus, section 95-5-29 controlled only subsection (2). *Id.* at 792-93. At the time *McCain* was decided, section 95-5-29 had not been amended. The statute applicable in *McCain* stated: "An action for any specific penalty given by this chapter may be prosecuted in any court of competent jurisdiction within twelve months from the time the injury was committed, and not after; and a recovery of any penalty herein given shall not be a bar to any action for further damages, or to any criminal prosecution for any such offense as herein enumerated. A party, if he so elect, may, under any of the provisions of this chapter, claim less than the penalty given." *Id.* at 790 (quoting Miss. Code Ann. § 95-5-29 (1994)). The amended statute now has this additional sentence opening its only paragraph: "An action for the remedies and penalties provided by Section 95-5-10 may be prosecuted in any court of competent jurisdiction within twenty-four (24) months from the time the injury was committed and not after." Miss. Code Ann. § 95-5-29 (Supp. 2006). The first sentence of the old statute is now the second sentence and begins, "All other actions for any specific penalty given by this chapter may be prosecuted in any court of competent jurisdiction within twelve (12) months from the time the injury was committed, and not after; and a recovery of any penalty herein given shall not be a bar to any action for further damages, or to any criminal prosecution for any such offense as herein enumerated. A party, if he so elect, may, under any

21

of the provisions of this chapter, claim less than the penalty given." Miss. Code Ann. § 95-5-29 (Supp. 2006).

¶26. On cross-appeal, and seemingly in response to the Stockstills' final issue raised, Gammill asks this Court to revisit *McCain* and now overrule it, since the legislative revision to section 95-5-29 specified portions of section 95-5-10 as remedial, and portions of it as penal, thus making the statute subject to varying limitations periods. In doing so, Gammill concedes she is not due "penalties," but requests that her remedial damages be not only affirmed but doubled in that she should be awarded under the statute "double the fair market value" of the trees which were cut by the Stockstills. Gammill urges this Court to overrule *McCain* so that she may prevail on this issue, since, in *McCain*, we specifically found both subsections under the statute to be penal. *McCain*, 725 So.2d at 794.[8] Indeed, Gammill asserts that the statute is remedial as it calls for double fair market value of the trees cut, which could be deemed to be a specific, and not a general, penalty. "[A]fter the wrongdoer pays the fair market value of the trees to the owner, any additional amount paid is not compensatory but a penalty." *McCain*, 725 So.2d at 793.

¶27. Gammill relies on the dissenting opinion in *McCain* which found section 95-5-10(2) to be penal, but section 95-5-10(1) to be remedial, describing subsection (1) as "intended to compensate tree owners, regardless of whether the 'guilty' party acted in good faith or by

---

[8]In *McCain*, we found that section 95-5-10(2) was subject to the limitations period provided in section 95-5-29, and we found section 95-5-10(1) was subject to the limitations period provided in section 15-1-33. 725 So.2d at 794.

22

honest mistake." *Id.* at 796 (McRae, J., dissenting, joined by Pittman, P.J., and Mills, J.). The Legislature amended the statute in its next session following our decision in *McCain*. In light of the legislative revisions to section 95-5-29, and upon further consideration of *McCain*, we are of the opinion that *McCain* should be overruled to the extent that the remedies provided in section 95-5-10(1) are subject to the limitations period set out in section 15-1-33.[9] Likewise, in *McCain*, we stated:

> The plaintiffs are not entitled to double the fair market value of the trees, the fair market value of the trees, or restoration costs. The double fair market value damages and reforestation costs are only permissible if action was taken within 12 months of the offense.

*Id.* at 794. We thus also find that *McCain* should be overruled to the extent that section 95-5-29 would apply to a claim for the fair market value of the trees cut or the cost of reforestation. Such damages would clearly be considered to be compensatory damages, while a claim for "double the fair market value" of the trees cut would indeed be penal in nature.

¶28. In sum, *McCain* is overruled to the extent that it found that the remedies provided in section 95-5-10(1) were subject to the limitations period set out in section 15-1-33, and that section 95-5-29 would apply to a claim for the fair market value of the trees cut and the cost of reforestation. Since the 1999 legislative amendment to Miss. Code Ann. § 95-5-29 does not apply to today's case, the practical effect of today's decision is that Gammill's claims for the fair market value of the trees cut and reforestation costs were governed by Miss. Code Ann.

---

[9]The majority in *McCain* found that section 95-5-10(1) was not subject to section 95-5-29, but was subject to the limitations period set out in section 15-1-33. 725 So.2d at 794.

23

§ 15-1-49 (Rev. 2003), which provides for a three-year limitations period. Therefore, in applying section 15-1-49 to Gammill's claims for the fair market value of the trees cut and the cost of reforestation, these claims were not barred. We thus find that the chancellor was not in error in entering a judgment in favor of Gammill and against the Stockstills for the sum of $65,526.50, representing the reasonable value of the timber cut ($50,026.50), and the reasonable cost of reforestation of the subject land ($15,500.00).[10]

### V.  WHETHER GAMMILL SHOULD HAVE BEEN AWARDED ATTORNEYS FEES' AND EXPERT WITNESS FEES

¶29. In denying Gammill's request for attorneys fees and expert witness fees, the chancellor recognized that Miss. Code Ann. § 95-5-10(3) gives the trial judge discretion to award expert witness fees and attorneys' fees to a litigant who prevails on a claim of cutting of timber. "All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court." Miss. Code Ann. § 95-5-10(3). The trial judge also read Miss. Code Ann. § 95-5-10 as a whole to provide for two types of violations, intentional cutting and cutting done by mistake, each resulting in different damage amounts for violations. The trial court found that the Stockstills cut down the trees on the subject land mistakenly, not intentionally, and that to award attorneys' fees in such a case would amount to removing the discretion afforded the trial judge by the statute under Miss. Code Ann. § 95-5-10(3) and encourage rewarding attorneys' fees in every such case of a violation by mistake. The trial court found

---

[10]Gammill conceded any claimed "penalties" under Miss. Code Ann. § 95-5-10(2) were barred by the one-year statute of limitations in Miss. Code Ann. § 95-5-29.

24

that, though punitive damages were not a prerequisite to awarding attorneys' fees, Mississippi law seemed to frown on awarding attorneys' fees in cases unless they were coupled with punitive damages. *See* **Grisham v. Hinton**, 490 So.2d 1201, 1205 (Miss. 1986). "With the sole exception of punitive damages cases, in the absence of contractual provision or statutory authority therefor, this Court has never approved awarding trial expenses and attorney's fees to the successful litigant. It has consistently been our view that such expenses are not allowable as part of the costs. Even where legal counsel for plaintiff unnecessarily put the opposing side to extra legal and trial expenses . . . we refused to permit an award of attorney's fees." *Id.* at 1205-06 (internal citations omitted). Since no punitive damages were awarded in this case, and because the record supports a finding that the cutting of the timber was done by mistake, the trial judge in his discretion decided not to award attorneys' fees to Gammill, notwithstanding the fact that judgment was entered in her favor.

¶30. On cross-appeal, Gammill argues primarily that the word "shall" means that awarding attorneys' fees is absolutely required. Indeed, Miss. Code Ann. § 95-5-10(3) states: "All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court." However, when this subsection is viewed in its entirety, the only logical interpretation which can be afforded is that the court has discretion in determining whether to award expert witness fees and attorneys fees, and if so, in what (reasonable) amount, but if such fees are awarded by the court, in the exercise of discretion, such fees "shall be assessed as court costs." From the record, we find no abuse of discretion by the chancellor in refusing to award a successful litigant expert witness fees and attorneys' fees. Stated

25

differently, we certainly cannot find from the record that the chancellor, in the denial of expert witness fees and attorneys' fees to Gammill was manifestly wrong, clearly erroneous, or applied the wrong legal standard. This issue is without merit.

## VI. WHETHER GAMMILL SHOULD HAVE BEEN AWARDED PREJUDGMENT INTEREST FROM THE DATE SHE FILED SUIT

¶31.    On cross-appeal, Gammill argues that the chancellor abused his discretion in choosing not to award prejudgment interest.  It is well-settled that in Mississippi a chancellor is afforded discretion in deciding whether to award prejudgment interest.  "An award of prejudgment interest rests in the discretion of the awarding judge. Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith. No award of prejudgment interest may rationally be made where the principal amount has not been fixed prior to judgment."  *Coho Res. v. McCarthy*, 829 So.2d 1, 19-20 (Miss. 2002) (quoting *Warwick v. Matheney*, 603 So.2d 330, 342 (Miss. 1992)).  *See also Tupelo Redev. Agency v. Abernathy*, 913 So.2d 278, 286 (Miss. 2005).

¶32.    Gammill argues that the Stockstills' denial of the claim in this case was in bad faith as they were aware that the land in question actually belonged to Gammill, and that the Stockstills therefore should not have cut the timber on the land.  While it is true that the Stockstills were on constructive notice that further research was needed and they, as reasonably prudent people, should have been on inquiry, charged with facts which could be revealed in a diligent and careful investigation, this does not mean they acted in bad faith.  Of course, what *could have*

26

*been* revealed was that the Stockstills actually owned the land. They simply made the assumption, albeit erroneously, that the exception was superfluous. As noted above, our case law states when prejudgment interest may be appropriate, when it is clearly not allowed, and that determining whether to award such interest is in the discretion of the trial judge. We thus cannot find that the chancellor's findings were manifestly wrong, clearly erroneous, or the result of an application of the wrong legal standard. No abuse of discretion was committed. This issue is without merit.

### CONCLUSION

¶33. For the reasons stated, the final judgment entered by the Chancery Court of Pearl River County is affirmed both on direct appeal and on cross-appeal.

¶34. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., NOT PARTICIPATING.**