BARNES, J., for the Court:
¶ 1. Rebecca and James Reeves (“the Reeveses”) appeal the circuit court’s denial of their motion for reconsideration or, in the alternative, for a new trial. Finding that the circuit court did not abuse its discretion in denying the motion, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. John Peterson and Rebecca (Peterson) Reeves were married in 1967. Dur *721 ing their twenty-nine-year marriage, John and Rebecca obtained property located in Jefferson County, Mississippi, which is at issue in this appeal. In 1988, John filed for divorce in Jefferson County. The divorce was immediately granted; however, due to procedural errors which resulted in an appeal to the Mississippi Supreme Court, the entry of divorce and property settlement were reversed and remanded.[1] In 1996, during the remand period, the couple obtained a divorce in Louisiana, and Rebecca married James Reeves in 1997. Rebecca still claimed, however, error in the chancellor’s granting of the property settlement, which resulted in another appeal to the Mississippi Supreme Court.[2] Finally, on July 29, 2005, a chancellor from the East Baton Rouge Parish in Louisiana entered a final judgment that, among other things, conveyed to Rebecca full title and ownership of several acres of the Pe-tersons’ marital property located in Jefferson County, Mississippi.[3] In turn, Rebecca conveyed the property to herself and James as joint tenants with rights of sur-vivorship on May 16, 2006.
¶ 8. In the fall of 2005, following Hurricanes Katrina and Rita, John proceeded to cut and remove damaged and diseased timber from the land, including timber on the land owned by the Reeveses. On May 26, 2006, the Reeveses filed a complaint, alleging that John had “willfully and maliciously” taken timber from property owned by the Reeveses, leased the property to a livestock owner, and granted hunting privileges on the property to a third party. John responded that the agreement to cut the timber was made prior to the property settlement and claimed the defense of good faith.
¶ 4. On December 11, 2006, the Reeveses filed a motion for summary judgment, contending that there was no genuine issue of material fact as to liability. The motion also elected for a writ of inquiry to determine damages, although the motion contained a valuation estimate submitted by the Reeveses’ expert. The motion was granted by the circuit court on February 2, 2007, awarding the Reeveses $182,452 in damages (based upon the valuation estimate contained in the motion), and a writ of inquiry was entered, reserving for John the right to challenge the Reeveses’ appraisal of damages within thirty days. John filed his response to the writ of inquiry on February 20, 2007. The response contained an independent, separate valuation disputing the damage estimate prepared by the Reeveses’ timber expert. A hearing was held on December 3, 2007, regarding the writ of inquiry.[4] The circuit court filed its Memorandum and Order on August 6, 2008, ordering John to pay damages in the amount of $92,901.60 to the Reeveses.[5] This amount was the value of the timber as estimated by John’s expert witness.
¶ 5. The Reeveses filed a motion for reconsideration or, in the alternative, for a new trial on August 13, 2008. In their motion, they argued that the court had failed to consider pre-and/or post-judg *722 ment interest in determining damages. Further, they argued that there was a new survey which showed that timber previously credited to John was actually on the Reeveses’ property. On August 27, 2008, the circuit court granted the motion as to the post-judgment interest, awarding the Reeveses interest at a rate of eight percent (8%) per annum. However, the circuit court denied the motion as to all other issues. The Reeveses now appeal the circuit court’s ruling.
I. Whether the circuit court erred in not allowing a hearing on the motion for reconsideration.
¶ 6. The Reeveses argue that, in order to present their motion for reconsideration properly, they should have been granted an oral hearing before the circuit court. To support their position, the Reeveses cite a portion of Rule 78 of the Mississippi Rules of Civil Procedure which states that:
Each court shall establish procedures for the prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of; but the judge at any time or place and on such notice, if any, as he considers reasonable may make orders for the advancement, conduct, and hearing of actions.
However, we note that Rule 78 goes on to state: “To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.” M.R.C.P. 78 (emphasis added). Further, in Guidry v. Pine Hills Country Club, Inc. of Calhoun County, 858 So.2d 196, 199 (¶ 16) (Miss.Ct.App.2003), this Court found that where the circuit court gives due consideration to a party’s motion for reconsideration, there is no need for a hearing on the motion. Accordingly, we find no error in the circuit court’s failure to conduct an oral hearing on the Reeveses’ motion for reconsideration. This issue is without merit.
II. Whether the circuit court applied an incorrect standard on the issue of damages.
¶ 7. The Reeveses also claim that the circuit court applied an incorrect valuation standard in determining the damage award. John counters that both experts used the same method of computation to determine the value of the timber. The Reeveses’ expert witness, Tom Middleton, testified that the fair market value (FMV) of the timber was $25,623. However, William Brown, John’s expert, testified that the timber’s FMV was $21,705.80. The circuit court based its award of damages on Brown’s testimony, which the Reeveses claim was the amount that the landowner would receive, not the FMV for the standing timber as required under statutory authority.
¶ 8. Mississippi Code Annotated section 95-5-10 (Rev.2004) “is the exclusive remedy for ‘cutting trees without consent.’ ” Jackson v. Carter, 23 So.3d 502, 504 (¶ 6) (Miss.Ct.App.2009) (citing Stockstill v. Gammill, 943 So.2d 35, 49 (¶ 24) (Miss.2006)). Subsection (1) states in part that:
If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and *723 unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability.... The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.
Miss.Code Ann. § 96-5-10(1) (emphasis added). “ ‘Fair market value’ is defined as ‘the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.’” Hartman v. McInnis, 996 So.2d 704, 711 (¶ 23) (Miss.2007) (quoting Black’s Law Dictionary 414 (6th ed.1991)).
¶ 9. Particularly at issue during the hearing was the value of the cherry bark oak and red oak. Middleton valued the cherry bark oak at $425; the red oak was valued at $400. Brown, on the other hand, valued both types of timber at $350.[6] Middleton’s report states that the unit prices for the timber in his report “were obtained from buyers of similar forest products in the area at the time of the cut, as well as foresters familiar with the market area.” He testified that he came up with his values based upon lump-sum bid sales, which were advertised in the open market.[7] Although irrelevant to the valuation of the damages, we note that the timber in question was not sold in a lump-sum bid sale.
¶ 10. Brown testified that he used the FMV of the timber in his report, as follows:
Q. Could you please tell us your opinion as to what the fair market value of cherry bark oak was in October of '05 then?
A. $350.00
Q. That’s what you reflect in your report?
A. Yes, sir.
Q. That would be in your opinion the fair market value of the red oak at that time also?
A. Yes, sir.
Further, in Brown’s timber estimate report, it stated that: “Prices are based on fair market prices in Natchez, MS area during fall of 2005.” Included in the report was a chart detailing sales of the various types of timber from January 2005 to February 2006. This chart corroborated Brown’s testimony at the hearing that prices usually decline in the fall/winter months. Although Brown admitted that the sales of timber during the fall were not lump-sum bid sales, there was only one sale on the chart that occurred during this period. This sale, on November 10, 2005, reflected a price of $300 for red oak. There was no price listed for cherry bark oak. Brown listed three sales subsequent *724 to that sale, all occurring in February 2006, which reflected that the prices for cherry bark oak and red oak ranged from $300-$350. According to Brown, all of these were bid sales, which he testified usually results in a higher price for the timber.
¶ 11. The Reeveses also argue that Brown did not take into account the value of the timber as it stands in the woods. “Where trees have been cut and removed through inadvertence or mistake, the proper measure of damages is the stumpage value, the value of the standing trees, un-enhanced by any labor of the trespasser.” Masonite Corp. v. Williamson, 404 So.2d 565, 568 (Miss.1981) (citations omitted). However, the testimony from the hearing showed that the timber was valued as standing timber. Counsel for John stated: “We’re talking about standing timber. That’s the value that’s supposed to be placed on this[.]” There is nothing in the record which contradicts that Brown’s values were based on what the market would pay for the standing timber at issue. Thus, we can find no error in the circuit court’s use of Brown’s valuation for the determination of damages and affirm.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.

. See Peterson v. Peterson, 648 So.2d 54 (Miss. 1994).

. See Peterson v. Peterson, 797 So.2d 876 (Miss.2001).

. This judgment was recorded with the chancery clerk in Jefferson County on October 17, 2005.

. We find il worthy to note that the Reeveses, in April 2007, expressed displeasure with their legal representation and filed a motion to substitute counsel in May 2007. This order was granted in October 2007.

. This included attorney's fees and expert witness fees in addition to the value of the timber.

. Both expert valuation reports base their prices for the timber upon a unit of “MBF,” an abbreviation denoting 1,000 board feet; this a typical unit of trade for dimension lumber and sawtimber stumpage.

. A lump-sum sale signifies the method of payment for the sale. In a lump-sum transaction, the seller and buyer agree on a total price for the standing timber, and full payment is made al contract closing. This is compared to a scale sale, which requires the buyer and the seller to agree on a per-unit price for each product prior to harvesting. Chris Demers and Alan Long, Steps to Marketing Timber, Form SS-FOR-17, University of Florida Institute of Food and Agricultural Sciences (pp. 3-4) (January 2002).